[Civil No. 1995.   Filed January 15, 1923.]

[211 Pac. 862.]

JOHN DUKE, Appellant, v. YAVAPAI COUNTY, ARIZONA, and the BOARD OF SUPERVISORS OF YAVAPAI COUNTY, ARIZONA, Appellees.

1. TAXATION—SHOWING CATTLE BOUGHT AT TAX SALE WERE TAKEN FROM PURCHASER BY SUIT DOES NOT SUSTAIN CLAIM FOR REPAYMENT BY COUNTY.—A mere showing that plaintiff purchased from a county at a tax sale certain cattle, which were later taken from him by suit brought against him, is not sufficient to establish the validity of his claim against the county for a return of the tax.

2. COUNTIES — STATUTE REQUIRING REPAYMENT OF SUM PAID AT TAX
   SALE HELD BASED ON SUPPOSED MORAL OBLIGATION.—Laws of 1919,
   chapter 148, requiring a county to repay a sum paid for cattle at
   a tax sale, and which recited that the officers of the county in
   making the sale had represented that the county had guaranteed
   the title to the cattle, was manifestly based on a supposed moral
   obligation of the county, and not a legal obligation, since the
   county was not legally bound by the unauthorized statements of
   its officers.

3. COUNTIES—VOLUNTARY STATEMENTS OF OFFICERS GUARANTEEING TAX
   TITLE IMPOSED NO MORAL OBLIGATION ON THE COUNTY.—Voluntary
   statements by county officers that the county guaranteed the title
   to cattle sold for taxes imposed no moral obligation on the county
   to repay the purchase price in the event title fails, since the buyer
   is charged with knowledge that he acquires only the title of the
   person against whom the cattle were taxed, especially where he
   bought the cattle for a small fraction of their value, thereby in-
   dicating he took the chance of losing his investment in the hope of
   realizing a great profit if the title were good.

4. COUNTIES — LEGISLATURE CAN DIRECT PAYMENT OF MORAL OBLIGA-
   TION.—The legislature has power to direct the board of supervisors
   of a county to pay a claim which the county was morally obli-
   gated to pay, though the claim could not be enforced by legal
   proceedings.

5. COUNTIES—STATUTE DIRECTING REPAYMENT OF MONEY RECEIVED AT
   TAX SALE WITHOUT LEGAL OR MORAL OBLIGATION IS VOID.—Laws
   of 1919, chapter 148, directing a county to repay the amount re-
   ceived at a tax sale where there was no legal or moral obligation
   to repay it, was void as contrary to Constitution, article 9, section
   7, prohibiting the county from making any donation to any in-
   dividual.

APPEAL from a judgment of the Superior Court
of the County of Yavapai. John J. Sweeney, Judge.
Affirmed.

Mr. Daniel E. Parks, for Appellant.

Mr. John L. Sullivan, County Attorney, and Mr.
W. J. Galbraith, Attorney General, for Appellees.

McALISTER, C. J.—In March, 1919, the legis-
lature passed an act, chapter 148, Session Laws of
1919, providing for the reimbursement by Yavapai
county of John Duke, his heirs, executors and as-

signs, on account of certain cattle sold at a tax sale in March, 1892, and for the levying of a tax by the supervisors of said county to pay the claim.

It appears from the act that in March, 1892, Yavapai county, through its proper officers, caused to be sold at public sale for the nonpayment of taxes 205 head of cattle which were purchased by the plaintiff, John Duke, for the sum of $785.25; that in 1894 he was deprived of the possession of these cattle as a result of a suit brought against him for their recovery; that before making the purchase he was informed by the supervisors that the county guaranteed the title to the cattle to whosoever might purchase them, and on the day of the sale the treasurer and tax collector announced publicly that title to the cattle would vest in the purchaser and be guaranteed by the county; that, relying upon this guaranty, plaintiff purchased the cattle; that he has repeatedly applied to the board of supervisors of said county to make good this guaranty and refund the money paid by him for the cattle, but it has failed and refused to do so. After reciting the foregoing facts, the act provides:

"Now therefore be it enacted by the Legislature of the State of Arizona:

"Sec. 1. The board of supervisors of Yavapai county is hereby authorized and directed to levy a tax sufficient to pay to John Duke, his heirs. executors and · assigns, the sum of seven hundred eighty-five and twenty-five one-hundreths ($785.25) dollars with interest thereon at the rate of six per centum (6%) per annum from March 1, 1892 to date of payment, and is further directed to cause said money so raised by taxation to be paid said John Duke, his heirs, executors and assigns.

"Sec. 2. All acts and parts of acts in conflict herewith are hereby repealed.

"Approved March 22, 1919."

The complaint discloses that in pursuance of this act plaintiff filed on September 8, 1920, with the clerk of the board of supervisors of Yavapai county his verified claim and demand on that county for the sum of $2,128.93—$785.25 principal and $1,343.68 interest—the amount chapter 148 authorizes and directs the county to pay him, together with a request that the board levy upon the taxable property of the county for the year 1920 a tax sufficient to pay it; that on September 20th thereafter the board disallowed the claim and refused to make the levy as requested; that when the claim was presented to the board for payment, also when it was disallowed as well as when the case was filed, the county was without funds to pay it or any part of it. The complaint prayed that an alternative writ of *mandamus* issue directed to the defendants commanding them to audit and allow the claim and to levy for the current year upon the taxable property of the county a tax sufficient to pay it. The alternative writ issued directing defendants to do this, or show cause on October 11th following why they had not done so.

The only answer of defendants is a demurrer upon four grounds, three of which, it alleges, appear upon the face of the petition, to wit, that plaintiff has a plain, speedy, and adequate remedy at law; that the claim was barred by limitation long prior to the enactment of chapter 148; that the claim was void *ab initio* and cannot be revived by legislative enactment, especially chapter 148. The fourth ground is that chapter 148 is unconstitutional and void in that it violates several provisions of the Constitution, to wit: Article 4, § 19; article 2, § 13; article 9, §§ 1 and 3; article 3. The demurrer was sustained and the plaintiff granted permission to amend, but he declined to avail himself of this privilege and announced that he would stand upon his petition.

Thereupon judgment that he take nothing by his action and that defendants have their costs was entered, and from this he appeals.

The order sustaining the demurrer and entering judgment are the assignments relied on by appellant. It does not appear, however, upon which ground of demurrer the court acted, whether one or all; but in the view we take of the matter it is unnecessary to consider any except the third, which raises the question of the validity of appellant's claim against the county. It is the contention of defendants, appellees here, that it was never a valid, legal claim, enforceable in the courts, and it does not appear in the complaint or among the reasons given by the legislature for directing its payment that appellant attempted within the proper time after its disallowance by the board of supervisors, or at all to enforce its collection by an action against the county. But inasmuch as this was the only remedy then open to him, it must be assumed that he pursued it, though unsuccessfully because of the invalidity of his claim; it being unreasonable to suppose that he would fail to enforce, or attempt to enforce, a just and valid demand of this size and character. The only facts appearing in the record which bear upon the validity of his title are that appellant purchased the cattle at a tax sale and afterward lost them in an action brought against him for their possession, and these are not sufficient when proven to establish the validity or legality of his claim against the county for a return of the tax. Before such a result could follow, all the facts required to make it valid should appear. The other facts recited in the act as reasons for its passage do not affect the legality of the claim, but are given for the purpose of showing that a moral obligation against the county was created.

In directing the board of supervisors to pay the. claim, the legislature evidently did so upon the theory that it was then unenforceable, whether it had been so from the beginning or not, because there could have been no reason for the enactment of legislation relieving appellant if his claim had been collectible, inasmuch as the enforcement of such rights is the very purpose for which the judicial branch of the government was created. And, besides, the wording of the act itself shows that its passage was prompted by a legislative desire to compel the county to discharge, not a legal, but what was thought to be a moral, obligation resting upon it, because the fact that appellant purchased the cattle, relying upon the statements of the board of supervisors and the treasurer and tax collector made before the sale that the county would guarantee the title to the cattle to whosoever purchased them, did not create a legal liability on the part of the county nor add in any particular to one already in existence, for there was none. These statements were voluntary, having been made in the absence of any statute authorizing them, and if they were the moving cause of appellant's purchase of the cattle any moral obligation to return the tax created thereby did not rest upon the county, but upon those who made them, or upon the owner of the cattle who took them from him, because the county could not be held responsible, either legally or morally, for the unauthorized statements of its officers. It is presumed that the validity of the title acquired by appellant was known to him and the officers equally, because the facts upon which such title was based were matters of public record accessible to everyone, and the law applicable to them was presumed to be within the knowledge of all. And the fact that his judgment, or that of those upon whom he relied, as to the validity of his title proved to be

incorrect, was chargeable neither legally nor morally to the county, since the statute did not confer upon its officers the right or power to bind it in that way. The county was interested in the cattle only to the extent of the taxes and could give no better title than the law authorized. Knowing that he could get only this title, appellant purchased the cattle voluntarily for a small consideration, less than $4 a head, and took the risk of losing his entire investment or of making a big profit; the result depending upon whether his title proved good or bad.

If the county were morally obligated to return this tax, there could be no question of the right and power of the legislature to direct the board of supervisors of Yavapai county to pay appellant's claim. *Fairfield* v. *Huntington,* 23 Ariz. 528, 205 Pac. 814. And this would be true notwithstanding its enforcement in the courts had long since been barred by the lapse of years, because limitation does not destroy a moral obligation nor interfere with the right of the legislature to satisfy it. But inasmuch as the county was under neither a moral nor a legal obligation to pay it, the use of the public funds for that purpose is prohibited by section 7, article 9, of the state Constitution, which provides that neither the state nor any county, city, town, municipality or other subdivision thereof shall ever make any donation to any individual, association or corporation. It is clear, therefore, that a legislative act directing the board of supervisors to satisfy this claim, or to levy a tax for that purpose, has neither a moral nor legal basis, and that its payment from the county treasury would amount to a mere donation. Hence chapter 148, Session Laws of 1919, contravenes this section of the Constitution and would not justify the board of supervisors in allowing appellant's demand.

It follows that the judgment of the lower court denying the relief prayed for was proper. It is therefore affirmed.

ROSS and LYMAN, JJ., concur.