LAGOON JOCKEY CLUB et al. v. DAVIS COUNTY et al.

No. 4636. Decided July 17, 1928. (270 P. 543.)
Dissenting Opinion, September 18, 1928.

*W. F. Dawson,* Co. Atty., *Wm. H. Folland,* City Atty., and *Shirley P. Jones,* Asst. City Atty., all of Salt Lake City, for appellants.

*Dan B. Shields, H. Van Dam, Jr.,* and *H. L. Mulliner,* all of Salt Lake City, for respondents.

THURMAN, C. J.

This action was instituted by the plaintiff under the provisions of the Uniform Declaratory Judgments Act (Laws 1925, c. 24), to enjoin certain criminal prosecutions threatened by the defendants and to determine the meaning and effect of certain statutes of the state.

In the legislative session of 1925, the Legislature enacted the following statute, which, in view of the questions presented here, we deem advisable to quote at length, including the title:

"An act relating to horse racing, and providing for the creation of a state racing commission and defining its powers and duties and repealing all acts and parts of acts in conflict therewith.

"Be it enacted by the Legislature of the state of Utah:

"Section 1. *Holding Horse Races.* Any individual who complies with the provisions of this act and any association or corporation which complies with the terms of this act, and which association or corporation, if formed or organized for the purpose of racing and breeding, or improving the breed of horses and conducting races and contests of speed, shall have the right to hold one or more racing meets in each year and to hold and conduct races and contests of speed by and between horses at such meetings.

"Sec. 2. * * * No more than two meetings shall be held in any one county in any one calendar year, and no meetings shall last longer than thirty racing days from the day of the commencement thereof.

"Section 3. * * * There is hereby created a state racing commission which shall consist of three members to be appointed by the governor, two of whom shall serve for a period of two years, and one for a period of four years. The commission shall appoint one of its members as chairman and another of its members as secretary. The compensation of the members of the commission shall be thirty dollars per day for the chairman, and twenty dollars per day for each of the other members, for each racing day for any meet held under the provisions of this act. This salary shall be paid from the fees collected by the commission as in this act provided.

"Sec. 4. * * * The commission is hereby granted the authority to issue licenses to persons, associations and corporations desiring to conduct racing meets, to provide rules and regulations for the holding of such meets, to prescribe the amount of and collect the fees to be paid for holding the same; provided, however, that said commission shall not collect a fee in excess of $500 for each racing day that said races are held. The commission shall also have the power and authority to revoke for cause any license granted to any individual, association or corporation to hold such racing meets.

"Sec. 5. * * * It shall be unlawful for any person, association or corporation to hold any racing meet without first having obtained

a license from the said state racing commission as in this act provided.

"Sec. 6. * * * It shall be unlawful to make or place any wager on the result of any race held under the provisions of this act; provided, however, that bets or wagers made under the co-operative or pari mutuel system of betting and wagering shall not be unlawful, and said co-operative or pari mutuel system of betting or wagering on the results of said races shall be under the regulations of the commission.

"Sec. 7. * * * All acts or parts of acts in conflict herewith are hereby repealed." Laws 1925, c. 77.

The act is commonly known as the Redd Act, and will be so denominated whenever referred to in this opinion. At the time of the passage of the Redd Act, and at the time it became effective, section 8161 of the Compiled Laws of Utah 1917 was in force and had been in force for a period of about 12 years. The section was entitled "Pool Selling and Bookmaking a Felony," and, among other things, it made pool selling on horse races a felony and punishable as such. For the purposes of this case, pool selling, and the punishment provided therefor, are the only provisions of section 8161 that are in any manner involved.

It is conceded by all the parties here that the co-operative or pari mutuel system of betting is a form of pool selling, and it follows from such concession that, unless the provisions of section 8161 relating to pool selling were repealed by the Redd Act, pool selling is still forbidden by law and punishable as a felony, as provided in said section.

The Redd Act was repealed in the Legislative session of 1927 (Laws 1927, c. 6) and thereafter this action arose under the following circumstances: After the repeal of the act, the plaintiffs assuming that the provisions of section 8161 forbidding pool selling on horse races was repealed when the Redd Act went into effect, and that there was then no law of the state forbidding pari mutuel pool selling on horse races, in the summer of 1927 commenced preparation for a racing meet at Lagoon, Utah, at which time and

place betting on horse races under the pari           system would be permitted. It is alleged by plaintiffs and not denied by defendants, that plaintiffs proceeded in their preparations in good faith, under the advice of eminent counsel, leading members of the Utah bar, to the effect that there was then no law in Utah forbidding pari mutuel pool selling on horse races; that plaintiffs procured a license from the city of Farmington, in which Lagoon is situated, authorizing plaintiffs to conduct said races, whereupon defendants, officers of said Davis county and the state of Utah, charged with the duty of enforcing the criminal laws of the state, threatened to prosecute any and all persons, under the provisions of section 8161, who might engage or participate in conducting said races as contemplated by the plaintiffs. In order to enjoin said prosecutions and to have declared by this court that section 8161, in so far as it purports to prohibit pool selling on horse races, has been repealed, plaintiffs instituted this action.

The complaint, in substance, states the issues as above outlined. The defendants demurred to the complaint. The demurrer was overruled by the district court of Davis county, to whom the case was tried. Defendants refused to further plead, judgment was entered for plaintiffs, and defendants appeal.

Defendants present the precise questions to be determined as follows: "Does section 8161, Comp. Laws Utah 1917, in view of the passage of the Redd Act and its subsequent repeal, still stand so as to prohibit pari mutuel betting and wagering on horse races?" Defendants affirm that it does, and plaintiffs deny. Before undertaking to state in detail the specific grounds upon which the respective parties base their contention, it will narrow the discussion and conserve both time and space if we first eliminate many questions of law as to which there seems to be no dispute. Many authorities are cited and copiously quoted from as to the effect of a repealing statute. Both parties, as well as the authorities, are in

harm[...]on the proposition that, unless an earlier statute is repealed by a later statute absolutely, by express reference thereto, then only such provisions of the earlier statute are repealed as are in irreconcilable conflict with the later statutes. In other words, if both statutes can exist and be in force at the same time in their respective fields of operation, then there is no conflict and consequently no repeal. We are of opinion that such is the law, and therefore it will not be necessary to cite the authorities referred to in the briefs.

It is also agreed by the parties in this case that, if a later statute repeals an earlier one, whether expressly or by implication, then the mere repeal of the repealing statute does not revive or restore the provisions of the earlier statute so repealed. It requires additional legislation to give force and effect to the earlier statute in so far as it was repealed by the later. This rule of law is not founded merely upon the concession of the parties. It is the statutory law of the state. Comp. Laws Utah 1917, § 5842.

The briefs of the contending parties filed in this case are illuminating and instructive. They have been of great assistance to the court in arriving at the conclusion we have reached. Nevertheless, if we should attempt to follow counsel in detail and express our views upon every proposition discussed and every illustration presented in support of their contentions, it would unduly lengthen our opinion without adding to its strength or perspicuity.

Appellants contend, in substance, that, in order to ascertain their full meaning and effect, the provisions of the Redd Act should all be considered together, that, when so considered, the Redd Act was nothing more than an exception or proviso to the pool selling provisions of section 8161, and that, when the Redd Act was repealed, the provisions of section 8161 were left in force the same as if the Redd Act had never been enacted. Respondents' contention is that the pool selling provisions of section 8161 were in irreconcilable with the provisions of the Redd Act, which declared

that the pari mutuel system of betting on horse races was not unlawful, and that therefore the pool selling provisions of section 8161, in so far as they prohibited pari mutuel pool selling on horse races, were abolished and unqualifiedly repealed at the very moment the Redd Act went into effect.

To dogmatically assert that either of these contentions is without some reason to support it would be treating too lightly a question not entirely free from doubt.

We have already quoted the Redd Act at length, but it is important that we briefly analyze it with the view of determining its purpose and effect. The title needs no elucidation. The first section provides that individuals and certain associations and corporations who comply with the provisions of the act may hold one or more race meets each year. Section 2 provides that not more than two meets shall be held in any one county during any calendar year and not for a longer period than 30 racing days from the day of commencement. Section 3 provides for the creation of a state racing commission, consisting of three members, to be appointed by the Governor, and fixes their terms of office, the form of their organization, and compensation. Section 4 authorizes the commission to grant licenses for conducting race meets, to provide rules and regulations for such meets, prescribe the fees to be collected, and the limitations thereof. It also clothes the commission with power to revoke licenses issued to individuals, associations, and corporations. Section 5 provides that it shall be unlawful for any person, association, or corporation to hold any race meet without first having obtained a license from the state racing commission as provided in the act. Section 6 provides that it shall be unlawful to make or place any wager on the result of any race held under the provisions of the act; provided, however, that bets or wagers made under the co-operative or pari mutuel system of betting and wagering shall not be unlawful, and that said co-operative or pari mutuel system of betting or wagering on the results of said races shall be under the regulations of the commission. Section

7 provides that all acts or parts of acts in conflict with this act are hereby repealed.

The general purposes of the act appear on its face to be threefold: (1) To bring horse race meets under the supervision and regulation of state officers; (2) to provide revenue; (3) to improve the breed of horses. There may have been other purposes, but those enumerated are clearly manifest. To accomplish these purposes, especially the two first mentioned, certain things were prohibited and made criminal which were not prohibited or made criminal by any previous law, to wit: (1) Holding a race meet without first obtaining a license as provided in the act; (2) making or placing a wager on the result of any race held under the act except under the pari mutuel system as conducted under the regulations of the commission.

Pool selling in any form on the result of horse races, as such, was not prohibited by the Redd Act or made a crime even when not authorized by the commission. So that, as contended by respondents, if the pool selling provisions of section 8161, as far as they relate to pari mutuel pool selling on horse races, were repealed, there is now no law of the state prohibiting such method of betting or wagering in that class of cases. Whether the Legislature that enacted the law concluded that punishing the offender for holding a race meet without a license was sufficient punishment, or whether it thought that section 8161 was still in force and covered the offense of pool selling when not authorized by the commission is largely a matter of conjecture, but the omission to make pool selling, as such, any crime at all, in view of previous legislation on the subject, at least furnishes food for reflection as bearing upon the question of legislative intention.

The question, however, is, Were the pool selling provisions of section 8161, relating to pari mutuel pool selling on horse races, absolutely repealed by the enactment of the Redd Act, as contended by respondents, or was the Redd Act, in effect, only a proviso or an exception ingrafted upon

section 8161, as contended by appellants? If it was, in effect, a proviso or an exception, then there is much force in the contention, from the standpoint of both reason and authority, that the repeal of the Redd Act would leave all of the provisions of section 8161, including the pool selling provision, in full force and effect.

In support of appellant's contention, our attention is called to the case of *Smith* v *Hoyt*, 14 Wis. 252. In that case it appears there was a general statute applicable in all cases requiring defendants to answer a complaint within 20 days. There was a subsequent statute enacted in 1859, providing that defendants in foreclosure cases might have 90 days in which to answer, but that it should not apply to mortgages executed after the act took effect. In the case under review, which was a foreclosure case, the court found that the mortgage sought to be foreclosed was executed after the 90 day statute became effective. Hence there was no law prescribing the time within which the defendants should answer, unless the former statute prescribing 20 days was applicable; but the 20 days had expired and no answer had been filed. Plaintiff thereupon took judgment by default. From the judgment so taken, defendants appealed. In these circumstances the question arose whether the 20-day statute was applicable to the case or whether there was no statute at all limiting the time in such cases. The statement of facts, as reported, is somewhat obscure, but, as we read the opinion, it was contended by appellant that the 20-day statute as to foreclosure cases had been repealed by the statute of 1858. The court in its opinion, at pages 255, 256, after referring to previous cases, says:

"But neither in that case, nor in that of *Beebee* v. *O'Brien, et al.*, 10 Wis. 481, was the question presented, whether, in actions commenced after the repealing act of 1859, the defendants in mortgage foreclosure cases to which no other act was applicable, would or would not be required to answer within twenty days, under the general provisions as to all defendants. And after carefully considering this question, we have come to the conclusion that in such cases the defendants would be so required to answer. It is true we have an established

rule, in the construction of statutes, that where an act or part of an act is repealed, it shall not be deemed to be revived by the repeal of such repealing act. R. S. c. 5, § 3. It is true also that this court has, in speaking of the effect of the act of 1858, upon the previously existing provisions in regard to the time to answer, said that it repealed them so far as foreclosure action were concerned. 10 Wis. 486. That language was natural in view of the questions presented in that case, and was sufficiently accurate for the purpose of disposing of them. But we are of the opinion that strictly speaking, the general provision requiring defendants to answer within twenty days, was not repealed by the act of 1858, nor by that of 1859, allowing ninety days to defendants in mortgage foreclosure cases, but that those acts merely excepted this particular class of defendants from its operation. That being so, where the statute creating the exception is repealed, the general statute which was in force all the time would then be applicable to all cases according to its terms. And this would be no violation of the rule of construction before referred to, that the repeal of a repealing act should not revive the act repealed. The act of 1858 was equivalent to a proviso attached to the general rule, that it should not be applicable to foreclosure defendants. But if a proviso creating an exception to the general terms of a statute, should be repealed, courts would be afterwards bound to give effect to it according to those general terms, as though the proviso had never existed. And this could not be said to revive a repealed statute. The rule against this relates to cases of absolute repeal, and not to cases where a statute is left in force, and all that is done in the way of repeal is to except certain cases from its operation. In such cases the statute does not need to be revived, for it remains in force, and the exception being taken away, the statute is afterwards to be applied without the exception. It follows that the defendants were in default, and that the judgment was properly entered."

That case appears to be be analogous in principle to the instant case. In 26 Am. & Eng. Ency. of Law (2d Ed.) at page 761, it is said:

"In a majority of the states it is now provided by statute that a law once repealed shall not be revived by the subsequent repeal of the repealing act, and there is no distinction in this respect between an express repeal and a repeal resulting by implication from the enactment of a repugnant act.

"These statutes being in derogation of the common law, are strictly construed, and according to such construction an act temporarily sus-

pending the operation of a repealing act leaves the repealed act in force during the period of suspension, because the suspension of an act is not a repeal of it.

"And so, too, the statutory rule is inapplicable to cases where the original act has been modified only and not repealed by the later one, as where an act merely excepts a particular class of cases from the operation of a previously existing general law, which continues to be in force. By the repeal of the act creating the exception, the general statute which was in force all the time then becomes applicable to all cases, according to its terms."

One of the cases cited in the note to the authority last quoted is *Bank for Savings* v. *Collector*, a case decided by the Supreme Court of the United States, reported in 3 Wall. 495, 18 L. Ed. 207. In that case the Internal Revenue Act of 1864 (13 Stat. 277) provided for the levying and collection of one twenty-fourth of 1 per cent. per month on numerous phases of banking operations of persons and corporations engaged in the business of banking. There was a proviso to the effect that the act should not apply to "any savings bank having no capital stock, and whose business is confined to receiving deposits and loaning the same on interest for the benefit of the depositors only, and which do no other business of banking." In 1866 (14 Stat. 136) the act of 1864 was amended by striking out the proviso above quoted. The directors of the savings bank, assuming that the bank was not liable for the tax, made no return for several months to the assessor of the United States. Thereupon the assessor estimated the amount as provided by statute in cases of delinquency, and gave his warrant to the collector of the district to collect the tax, with penalties. The collector being about to proceed, the corporation, savings bank, filed a bill in the Supreme Court of New York to enjoin the collection. A preliminary injunction having been granted there, the case was removed by certiorari to the Circuit Court of the United States for the Southern District of New York. The judges of the Circuit Court being divided upon certain questions, and a certifi-

cate of division being filed, the case came before the Supreme Court of the United States. Upon the question as to whether the repeal of the proviso left the remainder of the act in force, the court, at page 513, says:

"Beyond all controversy the proviso, while it continued in force, had the effect to exclude the corporation complainants from the operation of the substantive words of the section. Since the passage of the act, however, the proviso has been stricken out, and the palpable effect of the repeal is to leave the body of the act in full force and operation, without any such qualification as was imposed by the proviso."

If it be contended that in that case the proviso was attached to the substantive words of the act, and, in that respect, performed the legitimate office of a proviso we nevertheless are not inclined to hold that such distinction makes any difference in principle. We have already shown that in the Wisconsin case, above referred to, what was there determined to be a proviso or exception was an independent piece of legislation enacted at a different time from that of the substantive act. Besides this, we are unable to comprehend the logic of any such distinction. If a subsequent act has the effect of excepting something out of a previous act, thus performing the legitimate functions of a proviso, we see no reason why it should not be treated as a proviso the same as if it were attached to the substantive words of the act.

In *People* v. *Sweitzer*, 266 Ill. 459, 107 N. E. 902, Ann. Cas. 1916B, 586, the following lucid statement of the rule is enunciated at page 908. After quoting the statute, "No act or part of an act repealed by the General Assembly shall be deemed to be revived by the repeal of the repealing act," the court says:

"That provision has no application where the effect of an act is not to entirely abrogate a former act, but merely to withdraw from the operation of the earlier act a portion of the cases included within its terms, leaving the earlier act still in force except as to the cases

specifically provided by the later one. Under such circumstances, the repeal of the later act has the effect of again bringing the cases provided for by it under the operation of the original act."

It is difficult to distinguish some of the cases referred to, in principle, from the case at bar. Here we have a law which makes pool selling on horse races a felony. We had a subsequent law declaring, in effect, that a certain type of pool selling on horse races under regulations of the state racing commission was not unlawful. The first law was not in conflict with the subsequent law except as to pool selling under regulation of the commission. But the subsequent law was repealed. What was the effect? From the standpoint of reason, as well as from the authorities to which we have referred, there is much force in the contention that the repeal of the subsequent law left the first law in full force and effect the same as it was before the subsequet law was enacted. Respondents present the following supposed case to illustrate their position: "There is a statute making it a felony to operate a pool table. A later statute declares that it shall not be unlawful to operate pool tables, that all acts and parts of acts in conflict with this legislation are repealed and that pool tables shall be under the regulation of the cities and counties, which shall have power to license the same." Respondents then say: "We think there would be no doubt that the provision prohibiting pool tables would be at once repealed." We think so too. When one act states that certain conduct is unlawful and a subsequent act says unqualifiedly that the same conduct shall not be unlawful, there is an irreconcilable conflict resulting in an absolute repeal, even if there had been no repealing clause attached thereto. If, however, the subsequent law had stated in effect that "the operation of pool tables should not be unlawful when operated under a license from cities and counties," we think there would be a marked distinction. The implication would be that that which is now

unlawful will not hereafter be unlawful if done under the authority of a city or county, but if not so done, it will continue to be unlawful the same as before. In such case we cannot avoid the conclusion that both acts would be in force in their respective fields of operation. The first act would apply in cases where there was no authority from the city or county, while the subsequent act would apply in cases arising under that act. There would be no duplication of offenses as contended by respondents. The Redd Act makes betting on races held under the act unlawful except under the pari mutuel system under the regulations of the commission. That offense is not covered by section 8161. It also makes holding race meets without a license from the commission unlawful, whether such races permit wagering under the pari mutuel system or whether the race meet is held and operated merely for amusement or to test the speed of horses. Holding the race meet without a license is what constitutes the offense, and it is not duplicated by any provision of section 8161.

Respondents assume that the offense of holding a race meet without a license as provided in the Redd Act is the same offense as pool selling under the provisions of section 8161, and seek to apply the rule announced in *State* v. *Carmen,* 44 Utah 353, 140 P. 670, in which the court held that, where by one statute certain conduct was made a felony and by a subsequent statute the same conduct was made a misdemeanor, the latter repealed the former, and the accused could not be convicted of a felony. The distinction between that case and this is that in that case the offenses were the same, while in the instant case, as we have shown, the offenses are different.

What we have written thus far has been written after a reasonably careful examination of all of the authorities relied on by respondents as well as those relied on by appellants. Some of the authorities cited by respondents, when superficially viewed, appear to support their contention, but in our opinion they do not refute the proposi-

tion contended for by appellants that, where a subsequent statute is in effect a proviso or an exception to the provisions of a previous statute and the subsequent statute is repealed, the previous statute remains in full force and effect. We cannot avoid the conclusion that the whole effect of the Redd Act was to except a certain class of pool sellers from the provisions of section 8161 and provide that as to them pool selling would not be unlawful. That class of pool sellers was such as operated under the provisions of the Redd Act as therein prescribed.

Appellants also refer to cases cited in *People* v. *Sweitzer*, 266 Ill. 459, 107 N. E. 902, Ann. Cas. 1916B, 586, supra; *Agricultural Society* v. *State*, 130 Md. 474, 101 A. 139; *Palmer* v. *State*, 88 Tenn. 553, 13 S. W. 233, 8 L. R. A. 280. We will not prolong the opinion by a review of these cases. As far as they apply, they support appellants' contention.

Respondents cite many cases to the effect that, when a statute is repealed, it is dead and of no more effect than if it had never existed. There can be no dispute as to that. They also cite authorities to the effect that, if a statute was unintentionally or inadvertently repealed, the remedy is not with the courts but by legislative action. That too is uncontrovertible. The following authorities relied on by respondents are cited on various propositions: *Racing Commission* v. *Latonia Association*, 136 Ky. 173, 123 S. W. 681, 25 L. R. A. (N. S.) 905; *State* v. *Carmen*, 44 Utah 353, 140 P. 670; *Nettles* v. *Carson*, 77 Okl. 219, 187 P. 799; *State* v. *Penrod*, 102 Neb. 734, 169 N. W. 266; *Wood* v. *Bateman*, 149 La. 290, 88 So. 824; 25 R. C. L. 930, 941, 1087; *Schuyler* v. *Southern Pac. Ry., Co.*, 37 Utah 581, 109 P. 458; *U. S.* v. *Yuginni et al.* (D. C.) 266 F. 746; *U. S.* v. *Puhac* (D. C.) 268 F. 392; *Bank of N. Y.* v. *Tilton*, 82 N. H. 81, 129 A. 492; *State* v. *Board of Commissioners*, 22 Nev. 203, 37 P. 487; *Marioneaux* v. *Cutler*, 32 Utah 475, 91 P. 355, Ann. Cas. 1912C, 1088; *Ventura County* v. *Barry* (Cal. App.) 259 P. 764.

Respondents also make frequent reference to certain remarks made by the writer of this opinion, speaking for the court, in *State Fair Association* v. *Green et al.* (Utah) 249 P. 1016, in which the Redd Act, while it was in ■ force, came under review. In that case the issue was as to whether the Redd Act violated certain provisions of the state Constitution, among others, the provision forbidding the passage of any act containing more than one subject which shall be clearly expressed in the title. In discussing that question, the opinion contains language to the effect that the Redd Act repealed the pool selling provisions of section 8161, for the reason that it was in conflict therewith. As the Redd Act was then in force, there was undoubtedly a conflict between the two acts, as is always the case where one is an exception or proviso to the other, and the conflict continues as long as the exception or proviso is in force. However, it is unnecessary to indulge in a lengthy discussion of that question, as any statement made in that opinion to the effect that section 8161 or any provision thereof was repealed by the Redd Act was not within the issue of that case, and is therefore not authoritative here. If the same contention that is now made by respondents was urged before the honorable court who tried the case below, no doubt it was more or less influenced thereby, for, to their credit be it said, trial courts will seldom assume the responsibility of determining that what is said by an appellate court is mere dicta, and therefore not binding upon them.

Respondents' position that betting on horse races under the pari mutuel system is not now unlawful under any law of the state can only be sustained, if at all, by omitting from the Redd Act every condition under which betting under the pari mutuel system was permitted. They unhesitatingly read the act as if the following was all it con- ■ tained: "Bets or wagers under the co-operative or pari mutuel system of betting and wagering shall not be unlawful. All acts or parts of acts in conflict herewith are hereby repealed." If such method of interpreting the act

was permissible, respondents' position would be unasailable. But such method violates the cardinal rule of construction that every word, phrase, and sentence must be given effect, if possible, in order to ascertain the meaning and intent of the act. If this rule is applied to the act in question, it is at once apparent that the Legislature intended to except out of the provisions of section 8161 forbidding pool selling on horse races all persons, associations, and corporations who should qualify under the provisions of the Redd Act as therein prescribed and bestow upon them the privilege granted thereby.

It is the opinion of the court that the repeal of the Redd Act abrogated the privilege granted thereby and left the provisions of section 8161 in full force and effect the same as if the Redd Act had never been enacted.

The cause is therefore remanded to the trial court, with directions to dismiss the action at respondents' cost.

HANSEN and GIDEON, JJ., concur.

CHERRY, J. I concur. In substance and effect the Redd Act amounted to no more than an exception to the general provisions of section 8161. There is this further reason why the conclusion of the Chief Justice is correct: When the Redd Act was in force, bets or wagers made under the co-operative or pari mutuel system were lawful only when under the regulations of the state racing commission and on the races licensed by it. Such form of pool selling not under the regulations of the commission, or on races not licensed by it, was not within the immunity of the Redd Act, and was therefore prohibited by the general provisions of section 8161 even when the Redd Act was in force. If the Redd Act was now in full force and effect, the proposed pari mutuel pool selling on horse races by the plaintiffs could not be justified as lawful, because it is not and cannot be claimed that they are under the regulations of the state racing commission, or that they propose selling pools on licensed races only.

The Redd Act no more than qualified or modified section 8161. And, admitting that the repeal of the modifying act does not restore the original statute, such repeal certainly does not further reduce or diminish it. In this view section 8161 may now be said to prohibit and punish pool selling except by the pari mutuel system under the regulations of and on horse races licensed by the state racing commission. The plaintiffs do not pretend to bring themselves within the exception. Of course they cannot, because since the repeal of the Redd Act there is no state racing commission and no licensed horse races. But a statute is not invalidated because it contains an impossible exception.

STRAUP, J. I dissent. Were I of the opinion that the Redd Act is but an exception or a proviso to Comp. Laws Utah 1917, § 8161, I should readily concur in the result reached in the prevailing opinion. However, I cannot so characterize the Redd Act. Whether it should or should not be so regarded involves a comparison of the two acts or statutes.

The Redd Act, passed in 1925, is fully exhibited in the prevailing opinion. It, as is seen, relates to "horse racing and providing for the creation of a state racing commission," etc. Section 8161, passed in 1913, is the whole of chapter 34 of the Penal Code, and relates to "pool selling and bookmaking," and is so expressed in the title. It is as follows:

"Any person who engages in pool selling or bookmaking, with or without writing, at any time or place; or any person who keeps or occupies any room, shed, tenement, tent, booth, or building, float or vessel, or any part thereof, or who occupies any place or stand of any kind upon any public or private grounds within this state, with books, papers, apparatus, or paraphernalia for the purpose of recording, reporting, or registering bets or wagers, or of selling pools; and any person who records, reports, or registers bets or wagers, or sells pools, or makes books, with or without writing, upon the result of trial or contest of skill, speed, or power of endurance of man or beast; or upon the result of lot, chance, casualty, unknown or contingent event whatsoever, or any person who receives, registers, reports, or records, or

forwards, or purports or pretends to receive, register, report, or forward, in any manner, whatsoever, any money, thing, or consideration of value, bet or wagered, or offered for the purpose of being bet or wagered, by or for any other·person, or sells pools upon such result or pretended result; or any person who, being the owner, lessee, or occupant of any room, shed, tenement, tent, booth, or building, float or vessel, or any part thereof, or of any grounds within this state, knowingly permits the same to be used or occupied for any of these purposes, therein keeps, exhibits, or employs any device or apparatus for the purpose of recording, reporting, registering, transmitting, communicating, or transferring such bets or wagers or the selling of such pools, or becomes the custodian, stakeholder, or depositary for gain, hire, or reward of any money, property, or thing of value, stake, wagered or pledged, or to be wagered or pledged, on any such result; or any person who aids, assists, or abets in any manner in any of the said acts which are hereby forbidden, is guilty of a felony, and upon conviction is punishable by the imprisonment in the state prison for a period not exceeding one year, or by a fine in any sum not exceeding $2,000, or by both such fine and imprisonment."

The Redd Act is not one amending any statute or carving out of it an exception, or making any proviso thereto. It, on its face, is an independent act, and deals with a subject entirely different from that of section 8161 or chapter 34 of the Penal Code. The body, purpose, and intent of it are indicated by sections 1 to 5, inclusive. None of these is a mere exception or proviso to section 8161 or chapter 34 of the Code. Section 6 of the act is in conflict with section 8161 or chapter 34 of the Code. But that does not justify characterizing the Redd Act a mere exception or proviso to section 8161. Merely because two statutes, in some particulars, are in conflict, gives no license to characterize the one an exception or proviso to the other. As to that, the subject-matter, character, and purpose of the legislation must be considered. When that is done, I see no basis for the contention that the Redd Act is a mere exception or proviso to section 8161. Had the Legislature by the Redd Act, or by some act, merely amended section 8161, declaring, as is done in section 6 of the Redd Act, that it was lawful to bet or wager on horse racing under a co-operative or pari mutuel

system of betting and wagering, and such were all there was to such legislation, it might be said there was but an exception carved out of or created in section 8161. But that is not what the Legislature did by passing the Redd Act, for, as is seen, the body, character, and purpose of that act, when considered in its entirety, relates to a subject wholly different from that of section 8161. I cannot close my eyes to all of sections 1 to 5, inclusive, of the Redd Act, and look alone to section 6, and say that, and that only, constituted the purpose, character, and extent of the legislation. Section 6 was but a part and parcel of the whole act relating to "horse racing and providing for the creation of a state racing commission." Because it declared betting and wagering on horse racing under the co-operative or pari mutuel system of wagering or betting lawful, rendered that section, that part of the act in conflict with section 8161; hence the provision of section 7 of the Redd Act that all acts or parts of acts in conflict with it were repealed. Thus, whatever there was in section 8161, or in any other act or statute, which forbade wagering or betting under a co-operative or pari-mutuel system of wagering and betting on horse racing, was repealed by the Redd Act. To that extent section 8161 thereafter had no more effect than though it never had been enacted. That it is the general rule (25 R. C. L. 933, and notes to Ann. Cas. 1918B, 283), that the repeal of a repealing statute does not operate to revive the original statute unless it is expressly so provided in the last repealing statute, is not disputed. The claim here is that the repealing statute was but an exception or proviso to the original statute and hence when the former was repealed the latter was revived, although no language of any kind is employed in the last repealing act restoring or reviving what theretofore was repealed. I do not concur in that.

The further point is, not what now may or may not be done under the Redd Act, for, since its repeal not anything may be done under it, but what, since such repeal, is now

the status of the law as to the matter in hand. Confessedly, the Redd Act, when it was adopted, repealed all parts of section 8161, which forbade betting or wagering on horse racing under a co-operative or pari mutuel system of betting and wagering, and thereby made such betting and wagering lawful. The pertinent question thus is whether the repeal of the Redd Act restored or revived in section 8161 what admittedly was theretofore repealed therein when the Redd Act was adopted. If what was repealed was so restored by the repeal of the Redd Act, then, of course, betting or wagering on horse racing under a co-operative or pari mutuel system of wagering betting is unlawful, not because of the Redd Act, but of section 8161, which with the restoration forbids it. If, on the other hand, what was repealed in section 8161 by the adoption of the Redd Act was not restored or revived, as I think it was not by the repeal of the Redd Act, then section 8161 does not forbid wagering or betting on horse racing under a co-operative or pari mutuel system of wagering and betting, and hence such betting or wagering is not now unlawful, as there is no statute now forbidding it. Upon such viewpoint the case was considered and ruled by the court below. I think the ruling right and was justified by *State Fair Ass'n* v. *Green* (Utah) 249 P. 1016, where it was said by this court, and as it now again says, that all parts of section 8161 in conflict with the Redd Act were expressly repealed by that act. The unmistakable language of section 7 of the Redd Act does not admit of any other conclusion. And I do not see how the matter is helped by unjustifiably calling the Redd Act a mere exception or proviso to section 8161.