[Civil No. 3406. Filed March 12, 1934.]

[30 Pac. (2d) 841.]

DAVID H. BILES, County Treasurer and Ex-officio Tax Collector of Yavapai County, State of Arizona, Appellant, v. W. F. ROBEY, Receiver, Appellee.

Mr. Arthur T. La Prade, Attorney General, Mr. Charles L. Strouss, Assistant Attorney General, and Mr. John A. McGuire, County Attorney, for Appellant.

Messrs. Favour & Baker, for Appellee.

LOCKWOOD, J.—This is an appeal by David H. Biles, as county treasurer and *ex-officio* tax collector of Yavapai county, hereinafter called defendant, from a judgment of the superior court of that county, commanding him to accept from W. F. Robey, as receiver of the Head Hotel Company, a corporation, hereinafter called plaintiff, a certain sum of money tendered to defendant by plaintiff, as taxes due on the property of said hotel company for the year 1928. Judgment went in favor of plaintiff, and defendant has brought this case before us for review.

The facts are not in dispute, and the only matter involved is the meaning and constitutionality of chapter 72 of the Session Laws of 1933. The real questions are, did the legislature, by chapter 72.

*supra,* remit the interest and penalties which had accrued on delinquent taxes previous to June 1, 1933, under certain circumstances as set forth in the chapter, and, if it did, was such remission constitutional?

We consider, first, the interpretation of the chapter. It is entitled,

"An Act relating to the sale of property for delinquent taxes, and amending Section 18, Chapter 103, Session Laws 1931. . . . "

And upon its face shows that it is only meant to amend one section of chapter 103, Session Laws 1931, by making an addition thereto. Upon examining said chapter 103 it is apparent that it is divided into two portions, sections 1 to 14 thereof providing for a survey of the taxable property of the state, while sections 15 to 56, inclusive, set forth a complete procedure for the collection of delinquent taxes. The two portions of the chapter are clearly severable in their nature, and a referendum petition was duly filed against the first fourteen sections. We held that these provisions were subject to a separate referendum. *Warner* v. *White,* 39 Ariz. 203, 4 Pac. (2d) 1000. No referendum was invoked against the remaining sections of the act, which dealt only with the procedure for the collection of delinquent taxes, and they went into effect ninety days after the adjournment of the tenth legislature.

Previous to the adoption of chapter 103, *supra,* the collection of delinquent taxes in Arizona was regulated by article 7, chapter 75, of the Revised Code of 1928, being sections 3120 to 3138, inclusive, of that Code. The method set forth therein for collection provided for an action to be brought in the superior court, and the judgment was to the effect that the tax lien of the state should be foreclosed and the real estate, upon which the tax was imposed,

sold thereunder to satisfy the judgment, interest and costs. The property was subject to redemption in the usual manner, and, generally speaking, the procedure, after judgment, was the same as in the ordinary sale under a special execution. Section 3122, *supra,* provided:

" . . . All taxes shall bear interest from the time of delinquency at the rate of ten per cent per annum until paid, and a fraction of a month shall be counted as a whole month."

In addition thereto, certain fees were permitted to be charged by various officials for the collection of the taxes made in this manner.

Chapter 103, *supra,* substituted for the method of suit and sale, provided in the Revised Code of 1928 an entirely different system. On comparison of sections 15 to 56, inclusive, of that chapter, with article 7 of chapter 75, *supra,* it is evident that the legislature meant to re-enact, in substance, the provisions of the 1928 Code in regard to everything, including the interest on delinquent taxes, which appeared in the 1928 Code, except the manner of their collection. Instead of the county itself obtaining a judgment foreclosing the tax lien, and selling the property thereunder, the property was sold at public auction to the best bidder, that term being defined in section 25 of the chapter. A certificate of purchase was delivered to the purchaser, and, if the property was not redeemed within three years from the date of sale, the holder of the certificate brought suit to foreclose the right of redemption, as in case of a mortgage. If he did not desire to follow this method, he might, by waiting five years, receive a treasurer's deed.

Section 18 of chapter 103, *supra,* is the only part of that chapter which was amended by chapter 72, *supra.* Such amendment consisted, in effect, of

merely adding to the section as it existed, the following language:

"(b) All taxes now levied against real property which shall be delinquent on June 1, 1933, may be paid in twenty equal semi-annual instalments during and within a period of ten years, beginning on the first Monday in November, 1933, provided that such real property taxpayer at the time of any such semi-annual due date shall not then be delinquent in the payment of any current state, county, city or town tax levied after the date of the passage and approval of this act against the property involved. Where not supplied by existing records, county treasurers shall provide lists of taxpayers in their respective counties entitled to proceed as provided in this act, and shall compute the amount of delinquent taxes in their respective counties falling electively within the purview of this act. *The amount or amounts of any such taxes so delinquent on said date of June 1, 1933, upon which the taxpayer shall elect to pay the taxes as provided herein, shall bear interest at the rate of 6% per annum.* Any taxpayer may pay the entire amount or amounts due at any time, and if so paid the interest shall be computed only to the date of payment. If any taxpayer, having elected to comply with the provisions of this act, shall become delinquent in two or more of such semi-annual payments, then the entire amount of such delinquent taxes shall become due, and the county treasurer shall proceed with the sale of such property, as provided in paragraph (a) of this section. The taxes on any real property which shall have been advertised or sold for taxes prior to June 1, 1933, and upon which the period of redemption shall not have expired, may, except where sale has been made to private persons and certificate of purchase issued, be paid within the times, under the conditions, and in the manner herein provided for the payment of taxes delinquent on June 1, 1933, and the period of redemption on any such real property is hereby extended accordingly. A compliance with the terms hereof by a purchaser of real estate at a foreclosure sale shall be a sufficient compliance

with the terms of section 3116 of the Revised Code of 1928 as to entitle such purchaser to a certificate of purchase, and to a deed thereto upon the expiration of the period of redemption, in the event such property is not redeemed.'' (Italics ours.)

All other portions of chapter 103, including the section which contained the provision that taxes should bear interest from the date of delinquency at the rate of 10 per cent. until paid, remained in full force and effect.

We must therefore consider the meaning of the added language of chapter 72, *supra,* taking into consideration chapter 103, for there is no repealing clause in chapter 72, and it is the rule that when a law is amended by adding thereto, all portions of the law are to be given effect, if possible, and only those earlier portions which cannot be reconciled reasonably with the later and added enactment are considered as repealed. *Lagoon Jockey Club* v. *Davis County,* 72 Utah 405, 270 Pac. 543; *City of Tombstone* v. *Macia,* 30 Ariz. 218, 245 Pac. 677, 46 A. L. R. 828; *Rowland* v. *McBride,* 35 Ariz. 511, 281 Pac. 207.

On examining the provisions added by chapter 72, to section 18 of chapter 103, it appears that they provide an exception only to the time for the collection and the amount to be collected of certain delinquent taxes, and not a new general method of collection. They are expressly limited to taxes which are delinquent upon June 1, 1933, and provide such taxes may be paid in a different manner from that provided for taxes of every other class. Under the general law, taxes are payable in two semi-annual installments, and the collecting agency may not accept less than the full amount of tax due for such installment, plus the interest fixed by law upon any delinquency. The new chapter provides that any of the specified delinquent installments may be paid in twenty equal payments over a period of ten years,

if the delinquent taxpayer shall so elect, provided that he at all times keeps subsequent taxes paid without delinquency. It is made the duty of the treasurer to compute the amount of the delinquent taxes, which come within the purview of the clause. It is then provided:

"The amount or amounts of any such taxes so delinquent upon said date of June 1st, 1933, upon which the taxpayer shall elect to pay the taxes, as provided herein, shall bear interest at the rate of 6% per annum. Any taxpayer may pay the entire amount or amounts due at any time and, if so paid the interest shall be computed only to the day of payment."

It further provides that if the taxpayer, who has "elected to comply with the provisions of this act," which presumably means by paying one of the twenty semi-annual installments referred to, "shall become delinquent thereafter in two or more of such semi-annual payments, then the entire amount of such delinquent taxes shall become due, and the county treasurer shall proceed with the sale of such property, as provided in paragraph (a) of this section." There is an exception also made in regard to property which has, prior to June 1, 1933, been sold to private persons, and certificates of purchase issued therefor. Nowhere does chapter 72 expressly remit any of the accrued interest up to June 1, 1933, and, it will be observed, for taxes becoming delinquent after that date, the regular 10 per cent. interest continues to be charged. If we are to hold it is so remitted, it must be by implication from the general terms of the chapter.

It is the contention of the plaintiff that the effect of chapter 72 is to remit all interest which has accrued upon taxes delinquent before that date, conditional upon his making a payment of one-twentieth

of the original tax levied, with 6 per cent. interest upon such tax from June 1, 1933.

It is the position of defendant that there is no remission of any delinquent interest, and that the 6 per cent. interest referred to is to be computed on the total amount of tax and delinquent interest accrued, or at the least upon the principal of the tax, and that the interest already accrued must be paid in addition thereto.

Section 1 of chapter 72, *supra*, in subdivision (a) thereof, which is merely a re-enactment of the original section 18 of chapter 103, when referring to the amount for which the property will be sold, uses the phrase ''taxes, penalties, interest and charges'' and not the word ''taxes'' alone. All through the remainder of chapter 103, *supra*, whenever reference is made to the amount for which the property shall be sold, it is expressly provided that not only the taxes, but the interest, penalty and charges must also be paid. Whenever the property is redeemed, the same course is followed. On an examination of our tax laws for many years back the same situation appears. So far as we know, there are few, if any, places in our laws where the word ''taxes,'' with no additions or qualifying language, appears to be meant to include any interest, penalty, or charges. Whenever the legislature has intended such items should be considered included for any purpose, it has almost invariably used language specifically mentioning them.

We hold, therefore, that the true meaning of chapter 72, *supra*, is that, so far as the delinquent taxes which have accrued before June 1, 1933, are concerned, it was the intention of the legislature to remit all accrued interest, costs and penalties or other additions to those taxes as originally levied, provided that the taxpayer would comply with the conditions set forth in the chapter. We are the more led to

believe this when we consider the general conditions existing in the state and the nation, so notorious that this court takes judicial notice thereof, which undoubtedly caused the enactment of the chapter. For many years there has existed a great economic depression in our country, covering all parts of the land. Many property owners, through no fault of their own, have had their incomes entirely destroyed, or else depleted to such an extent that they would only furnish bare subsistence for themselves and their families. This, of course, destroyed their ability to pay their taxes, no matter how great their desire to do so, for while property taxes are assessed on the basis of the presumed value of the property, they are and must be paid from the income of the owner, and, if his income fails and the property is unsalable, the tax cannot be paid. Recognizing this situation, legislative bodies all over the country have passed measures of many kinds, intended to relieve taxpayers who had fallen into *bona fide* misfortune, so far as possible, from the calamity of seeing their property, acquired perhaps through many years of hard labor, utterly lost. These measures, while differing in language, have generally followed the same course, that is, of relieving the taxpayer from some of the accrued penalties which the law imposed for failure to pay his tax, and allowing him to pay the tax itself over a considerable period of time. We cannot avoid the conclusion that such was the intention of the legislature, for if the first contention of defendant be true, the taxpayer is in effect penalized by compound interest upon the previously accrued interest, and in the second case, the relief granted is meager. We therefore hold that under the provisions of chapter 72, *supra,* the delinquent taxpayer, who elects to comply with the provisions of the act, need pay only the tax as originally levied, plus 6 per cent. interest from June 1, 1933.

We then consider whether the chapter, bearing that construction, is constitutional. It is urged by defendant that it violates the provisions of section 7, article 9, and section 13, article 2, of the Constitution of Arizona, and section 1 of the Fourteenth Amendment to the federal Constitution. These constitutional provisions read as follows:

"Section 7. Neither the State, nor any county, city, town, municipality, or other subdivision of the State shall ever give or loan its credit in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation, or become a subscriber to, or a shareholder in, any company or corporation or become a joint owner with any person, company, or corporation, except as to such ownerships as may accrue to the State by operation or provision of law."

"Section 13. No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

We consider, first, the question of whether the statute violates section 7 of article 9, *supra*. It is urged that the remission of the interest and penalties, which the act makes, is in effect a donation to the taxpayer, and prohibited by the constitutional provision, and, in support of this contention, defendant cites the cases of *Rowlands* v. *State Loan Board,* 24 Ariz. 116, 207 Pac. 359; *Duke* v. *Yavapai County,*

24 Ariz. 567, 211 Pac. 862. In the case first cited, we held the relinquishment by the state of interest on loans made by it was, in effect, a donation to the borrower, and thus prohibited by the constitutional provision. In the second case, we held that money which had been paid by the purchaser of certain property at a tax sale, in reliance upon the voluntary statement of certain officials of the county that the title to the property purchased was good, created no legal or moral obligation on the county to return the money paid, because it appeared afterwards that the title obtained by the purchaser failed. Counsel for plaintiff do not dispute the law laid down in these decisions, but claim that it has no application to the present state of affairs, for the reason that the money involved in both these cases was due or paid by reason of a contractual relation existing between the state and the other party. Their contention is that the interest and penalties remitted by chapter 72, *supra,* do not arise from contract, but are in the nature of a penalty imposed by the state for failure to pay the tax, and that the legislature is, impliedly at least, authorized by the Constitution to make remissions of this kind by general law.

We consider, first, whether the interest fixed by the legislature which a taxpayer must pay in case he allows a tax levy to become delinquent, is in the nature of a debt, or whether it be a fine or penalty.

Interest, in the ordinary usage of the term, is the payment of money for the use of money belonging to another. As such, it invariably arises out of contract, is considered as a debt, and is not exacted for the purpose of compelling the payment of another sum of money. A penalty, on the other hand, is something which is agreed to by the parties or imposed by law, not as consideration for the use of money or property, but to compel the performance of an act. It will be noted that the rate of

so-called interest, which the taxpayer must pay, when his taxes are delinquent, is almost invariably much higher than the current rate of interest which the state is compelled to pay when it borrows money, sometimes twice or three times as great. Obviously, such an exaction is not interest in the ordinary sense of the word, but is intended and used for the purpose of compelling the delinquent taxpayer to pay his taxes because it is more expensive for him not to do so. We think it is obvious that the various impositions made by legislative authority for the failure to pay taxes when due, whether they are called interest, penalties, costs or anything else, are in reality penalties and not debts. The question has been frequently discussed, and the decisions are almost entirely to the effect that where the original taxes themselves are not regarded as debts upon which legal interest is collectible in the absence of a statute authorizing it, that any additional payment required by the legislative authority after a tax has become delinquent, is no part of the tax itself, as interest is a part of the ordinary loan, but is a penalty which is merely a part of the procedure used by the state for the purpose of collecting the tax. *Jones* v. *Williams*, 121 Tex. 94, 45 S. W. (2d) 130, 79 A. L. R. 983; *State* v. *Koeln,* (Mo. Sup.) 61 S. W. (2d) 750; *City of New Whatcom* v. *Roeder,* 22 Wash. 570, 61 Pac. 767; *Henry* v. *McKay,* 164 Wash. 526, 3 Pac. (2d) 145, 77 A. L. R. 1025; Cooley on Taxation, 4th ed., pars. 1274, 1821.

We hold, therefore, following the great weight of authority, that the so-called ''interest'' which is imposed by law in Arizona as an incident to delinquent taxes, is a penalty and not a debt.

May our legislature, under our Constitution, remit a penalty? Section 19, part 2, article 4, of the Constitution, reads in part as follows:

"No local or special laws shall be enacted in any of the following cases, that is to say: . . . 14. Remitting fines, penalties, and forfeitures."

It would seem that the reasonable implication from this provision is that the makers of the Constitution assumed the legislature had power to pass general laws remitting fines and penalties, for if they did not, the denial of the right to exercise it by special legislation would be unnecessary and absurd. This question was considered by the Supreme Court of Missouri in the case of *State* v. *Koeln, supra,* in construing a constitutional provision similar in substance to section 19, *supra,* and the court held that a necessary implication therefrom was that the legislature did have the power to remit penalties by a general law, and also that the interest imposed for the failure to pay taxes when due was not a debt or obligation, as were the original taxes, and that such penalties might be remitted, without violating a constitutional provision prohibiting the legislature from releasing any indebtedness, liability, or obligation to the state.

Issues almost identical in principle with those involved in this case arose in the case of *Jones* v. *Williams, supra,* and the Supreme Court of Texas therein discussed the matter at great length. The opinion is too long for extensive quotation, but it collates most of the cases bearng upon similar questions, and holds, as we do, that a remission of a penalty does not violate a constitutional inhibition against extinguishing an indebtedness, liability, or obligation, or the granting of public money to any person. We therefore hold that chapter 72, *supra,* does not violate section 7 of article 9 of our Constitution.

Is it a violation of section 13, article 2, of the Constitution of Arizona, and section 1 of the Fourteenth Amendment to the federal Constitution?

These provisions substantially mean the same thing, for they both forbid special privileges being granted and guarantee equal rights on the same terms to all citizens. It is said that the taxpayer who has paid his taxes for a given year when they are due, and the taxpayer who has allowed the same year's taxes to become delinquent, but has paid them before June 1, 1933, are discriminated against in favor of the taxpayer who pays the tax for the same year after June 1st, in that the first has lost the use of his money up to that date, and the second has been forced to pay interest thereon, while the third has had the use of his money, without the payment of any interest, over the entire period of delinquency. It has always been held that provisions similar to the constitutional ones in question do not prevent a reasonable classification of citizens, which may be based on property or personality, and that if the classification is reasonable, the fact that citizens falling within another class are in effect discriminated against by the operation of a law does not cause that law to violate such constitutional conditions. We are of the opinion that the classification is based upon a reasonable and natural difference, and, such being the case, it does not violate the constitutional mandates in question.

It may be, as is urged by defendant, that the effect of the legislation will be to delay greatly the collection of taxes now delinquent, and to encourage taxpayers in the future to delay payment of their taxes in the hope that, for some reason, and in some manner, they also may have future interest and penalties remitted, and that the honest taxpayer who makes every effort, even at times by great personal sacrifice, to pay his taxes when due, will be penalized, not merely by the loss of the use of his money, but by an increased tax at a later time, to reimburse what it has cost the state in the

way of interest on state warrants, and in increased prices paid by it for supplies, caused by the knowledge that the collection of any indebtedness against the state will be greatly delayed on account of a large delinquent tax list. All these things may be true, and some of them doubtless are, but this is an argument which, while it may well be addressed to the judgment of the legislature, is not one that may be considered by the courts. If the act is within the constitutional power of the legislature, the wisdom of its enactment is not a question for us. For the foregoing reasons the judgment of the superior court of Yavapai county is affirmed.

ROSS, C. J., and McALISTER, J., concur.