SALT LAKE COUNTY v. CLINTON et al. (Board of County Commissioners).

No. 2204. Decided September 15, 1911 (117 Pac. 1075).

1. APPEAL AND ERROR—SCOPE OF ASSIGNMENT OF ERROR—PLEADING—DISMISSAL. Where defendant has obtained a ruling sustaining objections to any evidence on the ground that the complaint did not state facts sufficient to constitute a cause of action, and the complaint was dismissed, the sufficiency of the complaint is the only question before this court on appeal; and hence the allegations of the answer are not available to defendant for any purpose. (Page 466.)

2. PLEADING — CONSTRUCTION — OBJECTION RAISED AT TRIAL. As against defendant's objection to the introduction of any evidence on the ground that the complaint did not state a cause of action, the allegations of the complaint are to be deemed true. (Page 467.)

3. COUNTIES—COUNTY BOARDS—STATUTORY PROVISIONS. Comp. Laws 1907, secs. 527, 529, relating to the advertising for bids for books and stationery for a county's use, and for the publication of county reports, notices, and advertisements, sec. 511, subd. 7, requiring the county auditor to examine claims for such publication, and sec. 2620, requiring the county treasurer, under the direction of the board, to publish a list of delinquent taxes, are mandatory provisions and should be at least substantially followed. (Page 467.)

4. EVIDENCE—PRESUMPTIONS—OFFICIAL ACTS. In an action against a board of county commissioners and their bondsmen to enforce a personal liability for allowing a claim against the county, and ordering it paid, where there is no charge of fraud or collusion, the presumption is that the board, in allowing the claim, acted in good faith. (Page 467.)

5. OFFICERS—LIABILITY. FOR OFFICIAL ACTS—ERROR OR MISTAKE. Quasi judicial officers cannot be held personally liable for errors or mistakes, while honestly exercising, within their jurisdiction, the judicial functions of their offices, however erroneous their judgment may be. (Page 468.)

6. COUNTIES—COUNTY BOARDS—OFFICIAL BONDS—LIABILITY—STATUTORY PROVISIONS. Comp. Laws 1907, sec. 506, provides that when any board of county commissioners shall, without authority of law, order any money paid, and such money shall have been actually paid, the county attorney shall sue such commissioners and their bondsmen to recover the money so paid. Sections 527, 529, provide that the board shall advertise for bids for books and stationery, and for the publication of county notices and advertisements, and shall award the contract to the lowest competent bidder, or may reject all bids and readvertise. Section 511, subd. 7, provides that the board shall settle and allow all claims against the county after examination by the auditor; and section 2620 requires the county treasurer, under direction of the board, to publish an annual list of delinquent taxes. The complaint, in an action under section 506, alleged that the board, without authority of law, allowed and ordered payment of a claim for the publication of the list of delinquent taxes, without having first invited bids for such publication or awarded a contract therefor, but there was no charge of corruption, fraud, or bad faith in allowing the claim. *Held*, that the hearing and determination by the board of the validity of the claim required the exercise of judicial or quasi judicial functions, and that, as the claim was allowed for a purpose authorized by law, though made erroneously and in an irregular manner, the members of the board were not personally liable for the amount of the claim. (Page 468.)

APPEAL from District Court, Third District; *Hon. George G. Armstrong,* Judge.

Action by Salt Lake County against James E. Clinton and others, constituting the Board of County Commissioners of Salt Lake County, and their bondsmen.

Judgment for defendants. Plaintiff appeals.

AFFIRMED.

*Job P. Lyon, John Jensen* and *I. E. Willey* for appellant.

*Stewart & Stewart* and *Booth, Lee, Badger & Rich* for respondents.

McCARTY, J.

This action was brought by the county attorney of Salt Lake County, in the name of the county, against the board of county commissioners of said county and their bondsmen. The action was brought under Comp. Laws 1907, section 506, which provides:

"Whenever any board of county commissioners shall, without authority of law, order any money paid as a salary, fee, or for any other purpose, and such money shall have been actually paid, or whenever any other county officer has drawn any warrant or warrants in his own favor or in favor of any other person, without being authorized thereto by the board of county commissioners, or by law, and the same shall have been paid, the county attorney of such county is hereby empowered, and it is hereby made his duty, to institute suit in the name of the county against such person or persons and their official bondsmen to recover the money so paid, and no order of the board of county commissioners shall be necessary to maintain such action; and when the money has not been paid on such order or warrants, it is hereby made the duty of the county attorney of such county, upon receiving notice thereof, to commence suit in the name of the county to restrain the payment of the same, and no order of the board of county commissioners shall be necessary in order to maintain such action."

The complaint, so far as material here, alleges: "That on or about the 8th day of January, 1909, the said defendants

James E. Clinton, John C. Mackay and Walter J. Burton, acting as the board of county commissioners of Salt Lake County, did, without authority of law, allow, order and cause to be paid to the Inter-Mountain Republican Company, a corporation of the State of Utah, publishing a daily newspaper known as the Inter-Mountain Republican, in the City of Salt Lake, State of Utah, a certain claim amounting to five thousand seven hundred and twenty-seven dollars and fifty cents ($5,727.50) for the advertisement and publication, in the Inter-Mountain Republican aforesaid, of the delinquent list of persons and property owing taxes to Salt Lake County for the year 1908, for a period of ten days, beginning on or about the first Monday in December, 1908." It is further alleged that the payment of this money to the Inter-Mountain Republican Company, by order and direction of the board of county commissioners, was "illegal and without authority of law in this: That prior to the said publication of the notice and advertisement of the delinquent tax list, as aforesaid, no bids for the publication of the said notice had been invited or received; nor had the contract for the publishing of notices and advertisements, including the publication and advertisement of said delinquent tax notice, been awarded, as required · by Comp. Laws 1907, section 529; nor had any contract for the publication of said notice and advertisement of said delinquent tax list been made and entered into; nor has the county treasurer of Salt Lake County been directed by the board of county commissioners of said county to advertise or publish said delinquent tax list in a newspaper having a general circulation in said county, as required by Comp. Laws 1907, section 2620." It is further alleged that the said $5727.50 was actually paid to the Inter-Mountain Republican Company by the county treasurer, on a warrant of Salt Lake County, before the commencement of this action.

Defendants filed a demurrer to the complaint, alleging, as grounds of demurrer, that the complaint did not state facts sufficient to constitute a cause of action. The court overruled the demurrer, and the defendant filed an answer to the com-

plaint. When the cause came on for trial defendants objected to the introduction of any evidence, on the ground that the complaint did not state facts sufficient to constitute a cause of action. The court sustained the objection. Plaintiff excepted to this ruling, declined to amend the complaint, and elected to stand upon it, whereupon the court, on motion of defendants, rendered judgment dismissing the action. To reverse this judgment, plaintiff has appealed to this court on the judgment roll.

Counsel for respondents, in their printed brief, have devoted considerable space to the discussion of matters alleged in the answer as a justification of the commissioners in ordering the payment of the $5727.50 mentioned. Respondents having obtained a ruling of the court sustaining their objection to the introduction of evidence on the ground that the complaint does not state facts sufficient to constitute a cause of action, and the court having, on their motion, rendered judgment dismissing the action on that ground, the sufficiency of the complaint is the only question before this court, and therefore the allegations of the answer are not available to respondents on this appeal for any purpose.

As stated by counsel for appellant in their printed brief, "the charge or claim which is alleged to have been allowed and ordered paid without authority of law in this cause is a charge for printing the delinquent tax list for the year 1908."

Comp. Laws 1907, section 527, provides:

"It shall be the duty of the county auditor of each county having a population of 10,000 or more, on or before the 1st day of June of each year, to prepare separate estimates of the books, blanks, and stationery required for the use of the county officers during the year beginning July 1st; and, during the first week in June, he shall publish for one week a brief advertisement in a newspaper published in the county, or having a general circulation therein, stating the probable quantity of each item of books, blanks and stationery required by such county during the ensuing year, and inviting bids therefor, which bids shall be filed with the auditor on or before the 1st day of July. All bids shall state separately the price of each item of books, blanks, and stationery to be furnished."

Section 529 is as follows:

"At the time of inviting bids for books, blanks, and stationery, the auditor shall also invite bids for the publishing of county reports, notices, and advertisements during the ensuing year beginning July 1st. The bids for the same must be filed with the auditor on or before the 1st day of July, and at the time of opening bids for furnishing books, blanks, and stationery, the board of county commissioners shall open the bids for publishing reports, notices, and advertisements, and shall award the same to the lowest competent bidder, circulation considered; provided, that the board of county commissioners may reject any or all bids and readvertise."

Section 2620 provides that on or before the first Monday in December of each year the county treasurer must, under the direction of the county commissioners, publish the delinquent list of unpaid taxes, and must publish with such list a notice that, unless the delinquent taxes, together with the cost of publication, are paid before the third Monday in December, the real property upon which such taxes are a lien will be sold for taxes and costs.

It is not alleged in the complaint, nor is it contended or even suggested, that the county commissioners acted in bad faith, or from corrupt motives, or were in any sense guilty of collusion or fraud, in allowing and ordering **2, 3, 4** the payment of the claim in question. The allegations of the complaint, however, which, for the purpose of determining the sufficiency thereof, are deemed to be true, show that there was no advertisement for bids by the county auditor, as required by Comp. Laws 1907, sections 527 and 529; nor were any bids received for the publication of the delinquent tax list; no contract was ever awarded; the county treasurer was never directed by the board of county commissioners to publish the delinquent tax list; and the claim for the publication thereof was never examined by the county auditor, as required by subdivision 7 of Comp. Laws 1907, section 511. It is contended by appellant that the foregoing provisions of the statute are mandatory, and that, none of them having been complied with, the county commissioners were absolutely without authority of law to allow the claim;

and the complaint alleging, as it does, the noncompliance with every one of the above requirements, states facts sufficient to constitute a cause of action. We fully agree with counsel for appellant that these provisions of the statute are mandatory, and should be at least substantially followed. Manifestly the object of the law is to protect the public against fraudulent and collusive contracts, and where it is sought to hold the county liable for services rendered it under an express or implied contract, ordinarily no recovery can be had, unless there is a substantial compliance with the statute under and in pursuance of which the services were performed. In this case, however, the question of whether the claim of the Inter-Mountain Republican Company for the publication of the delinquent tax list was a valid and enforceable demand against the county is not conclusive. For the purposes of this decision, we might concede that counsel for appellant are correct in their contention that the Inter-Mountain Republican Company, because of the irregularities of the board of county commissioners and certain other county officials in failing to procure the publication of the tax list as required by statute, could not, in an action at law, have enforced the claim here in question against the county. From this, however, it does not necessarily follow that the county commissioners are personally liable because they allowed the claim and ordered it paid. There being no allegation in the complaint of bad faith, fraud or collusion, the presumption is that the county commissioners in allowing the claim and ordering it paid acted in good faith.

It is contended that, notwithstanding the county commissioners are presumed, under the circumstances, to have acted in good faith, they nevertheless ordered the claim paid "without authority of law," for the reason that prior to the publication of the delinquent tax list in the Inter-Mountain Republican no bids for said publication had been made or received, and no contract had been awarded, as required by law. County commissioners are quasi judicial officers. It is a well-settled rule of law that quasi judicial officers cannot be held personally liable for errors or mistakes

while honestly exercising, within their jurisdiction, the judicial or quasi judicial functions of their offices, however erroneous or misguided their judgment may be. The hearing and determination by the board of county commissioners of the justness or validity of the claim in question for the publication of the tax list mentioned required the exercise of the judicial, or, at least, quasi judicial functions of the board, and, in the absence of fraud or corruption on their part in allowing and ordering the payment of the claim, they cannot be held personally liable therefor. "A board of county commissioners, in the audit, adjustment, allowance, or disallowance of a claim against a county, exercises judicial functions." (7 A. & E. Ency. L. [2d Ed.], 1003; 11 Cyc. 411; Throop, Pub. Off., sections 552, 553; Mechem, Pub. Off., 638; *McFarland v. McCowen,* 98 Cal. 329, 33 Pac. 113; *Lamberson v. Jefferds,* 118 Cal. 363, 50 Pac. 403; *McBride v. Newlin,* 129 Cal. 36, 61 Pac. 577; *Santa Cruz Co. v. McPherson,* 133 Cal. 282, 65 Pac. 575.) The purposes for which the county commissioners may appropriate and direct the payment of money out of the county revenues are designated by law, and when appropriated and ordered paid for one or more of the purposes so designated such appropriation and order is not without authority of law, though made erroneously and in an irregular manner. It is for money paid out by order of the board for some purpose not authorized by law—that is, paid out for a purpose which the law does not sanction under any circumstances—that the members of the board are personally liable.

*Paxton v. Baum,* 59 Miss. 531, was an action brought by tax payers against members of the board of supervisors and their bondsmen, to recover for county money alleged to have been appropriated by the supervisors to certain objects (not necessary to enumerate) not authorized by law. The statutes of Mississippi, among other things, provided that the boards of supervisors shall direct the appropriation of money that may come into the treasuries of their respective counties, but shall not appropriate the same to any object not authorized by law. The statutes further provide that, "if any board of

supervisors shall appropriate any money to any object not authorized by law, the members of such board shall be liable personally for such sum of money to be recovered by suit . . . of any person who is a taxpayer," etc. The court, in the course of a well-considered opinion in that case, says:

"If it is appropriated by the board of supervisors to some other object than is authorized by law, members are liable personally for it, unless they voted against such appropriation. It is for money appropriated to something for which the law does not permit it to be appropriated at all, in any way or under any circumstances, that members are personally liable. It is for a diversion of money from its legitimate objects, and not for appropriation to a proper object, although in an irregular or unauthorized manner, that liability is imposed on members personally. . . . If this is not the true interpretation of the language mentioned (referring to the expression 'not authorized by law'), members of the boards of supervisors would be liable personally for every mistake or error of judgment or of information as to facts, whereby money was appropriated, even to proper objects, if not appropriated in strict accordance with law as to every circumstance attending it. Either members of the boards of supervisors are personally liable for every appropriation not made in strict conformity to law, or they are not liable, except for a diversion of public money from authorized objects, and its appropriation to such as are not authorized."

And again the court says:

"Where is the line and what is the limit of this personal responsibility? Shall we say that it exists if the letting out of the contract has not been advertised at all, but does not arise if there has been an advertisement for ten or fifteen days? Shall we make the members liable if the contract was made in vacation, but not liable if made in open session, at an adjourned meeting, which they had no authority of law to hold? Shall we give judgment against them if the obligation was contracted at the wrong place, and acquit them if the place was right, but the time wrong?"

In concluding the opinion, the court tersely illustrates what we consider to be the correct rule in the following language:

"Manifestly it is impossible, after we pass the point of corruption, to draw any line, other than that laid down by us, namely, liability where the subject-matter of the appropriation is beyond the jurisdiction of the board; nonliability where the object is within the jurisdiction, but there has been a mistaken exercise of legal power."

As we have suggested, every public officer exercising judicial, or quasi judicial, power, whose duty it is to appropriate and pay out public funds for material furnished or services rendered to the public, must of course be guided by the law requiring or authorizing such payments to be made. He may, however, in exercising his discretion, misconstrue or misapply the law, and if he does so in good faith, and there is no collusion, fraud or corruption on his part, he cannot be compelled to repay money he may have paid irregularly or in an unauthorized manner for material furnished or services rendered for the public benefit. If the purpose for which the money is devoted is a public one, and the law authorizes or directs the officer, in the exercise of his judicial or quasi judicial functions, to apply it for such purpose, then, ordinarily, the officer cannot be held personally liable for an error of judgment or for being mistaken with regard to the manner of making payment, or for not strictly following the procedure required by law before the payment is made. If such were not the law, neither county commissioners nor other quasi judicial officers, whose duty it is to appropriate and authorize the payment of public funds for public services, could, with safety, assume the duties of their respective offices. If, for instance, they should, in the exercise of their judicial power, and while acting within their jurisdiction, allow one, or any other, per cent. in excess of what others might think should be allowed for a specified amount of material furnished or for certain services rendered the public, and if the excess thus allowed should be regarded as a payment without authority of law, the officers could be compelled to respond in damages for every error of judgment in such cases, regardless of their good faith. Of course, the price paid for materials furnished or for services rendered for the public benefit may be grossly in excess of the true value thereof, and from this it might be inferred that the officer acted corruptly; but in such case it would not be mere error of judgment. It would be deemed a fraud. The question in this case is not what respondents should have done, considered from a moral point of view. The question is whether the payment of

money in question was, under the circumstances, paid without authority of law, or wrongfully paid in bad faith, or in fraud. As we have pointed out, the county commissioners are not only authorized, but the statute makes it their duty, to adjust, allow, and order the payment of claims presented to the county for the publication of delinquent tax lists, when such publications are made under and in pursuance of the provisions of the statute hereinbefore mentioned. Therefore, while the payment of the $5727.50 in question to the Inter-Mountain Republican Company may have been made in an irregular manner, yet the payment was not made without authority of law.

It appearing from the complaint that the money was appropriated and devoted to an object for which the law authorizes the payment of money out of the county revenues, and the commissioners having acted within their jurisdiction, and it not being alleged that they acted in bad faith or in fraud, they cannot be held personally liable, however erroneous their judgment respecting the validity of the claim may have been.

Judgment affirmed. Costs to respondents.

FRICK, C. J., and STRAUP, J., concur.