[Civil No. 3536.   Filed June 17, 1935.]

[46 Pac. (2d) 1064.]

CARL N. PUTERBAUGH and HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Corporation, MARK HICKS and FIDELITY & CASUALTY COMPANY OF NEW YORK, a Corporation, and BURTON A. GUYNUP and AMERICAN EMPLOYERS' INSURANCE COMPANY, a Corporation, Appellants, v. GILA COUNTY, a Body Politic and Corporate, Appellee.

Mr. D. E. Rienhardt and Mr. Louis B. Whitney, for Appellants.

Mr. Rouland W. Hill, for Appellee.

LOCKWOOD, C. J.—Gila county, a municipal corporation, through its county attorney, Rouland W. Hill, brought suit against Carl N. Puterbaugh and his bondsman, Hartford Accident and Indemnity Company, under the provisions of sections 790 and 791, Revised Code 1928, to recover certain sums which it was alleged defendant Puterbaugh had, as a member of the board of supervisors of Gila county, ordered paid out of the county treasury without authority of law. Similar suits were filed against Mark Hicks and Fidelity & Casualty Company of New York, his bondsman, and Burton A. Guynup and the American Employers Insurance Company, his bondsman. Since the same legal issues were presented, and the facts, while differing in detail, were such as could well be presented in one trial, the cases were consolidated and tried as one, and have been presented as one on the appeal.

The complaint against Puterbaugh alleged, in substance, that from January 1, 1931, to December 31,

1932, he was a duly elected, qualified, and acting supervisor of the board of supervisors of Gila county, and that during such time he did, as supervisor, make and present to the board of supervisors of the county certain claims for reimbursement for expenses incurred by him as a supervisor for traveling, lodging and meals, and also for reimbursements for his expenditures for a telephone in his place of residence while a member of the board. The complaint referred to the claims for reimbursement filed by Puterbaugh, and alleged that he did not at any time dissent from the order made by the board of supervisors for the payment of such claims, and that he, after the approval of the claims by the county recorder and the majority of the board of supervisors, accepted warrants of Gila county for such amounts, and received payment therefor in lawful money of the United States. The complaints against Hicks and Guynup were the same in substance.

Each of the defendants demurred to the complaint, and the demurrers were overruled. Defendants thereupon filed a motion to dismiss the actions for lack of jurisdiction, which motion was finally denied, and they were ordered to plead. They thereupon answered, alleging that, with the exception of certain small amounts allowed to defendants Guynup and Hicks as mileage for travel from their places of residence to Globe to attend official meetings of the board of supervisors, for which amounts such defendants offered to confess judgment, all of the sums collected by them on the claims, as aforesaid, were for necessary expenses incurred in the transaction of their official duties as supervisors on behalf of Gila county.

The case came to trial, and judgment was finally rendered in favor of plaintiff in accordance with the prayer of its complaint on February 26, 1934. After

the usual motion for new trial was made and over-ruled, this appeal was taken.

■ There are some five assignments of error, four of which raise questions as to the admission and rejection of evidence and the sufficiency of the evidence to sustain the judgment. After the reporter's transcript of the evidence was filed in this court, plaintiff moved to strike it and this motion was, after due consideration, allowed. Such being the case, we have not before us the evidence upon which the trial court rendered its judgment, nor have we anything to show its actions in regard to the admission or rejection of evidence. We must, therefore, assume that its rulings on these questions were correct, and that there is sufficient evidence to sustain the judgment. *Miller* v. *Maddux,* 37 Ariz. 485, 295 Pac. 326; *In re Scott,* 21 Ariz. 332, 188 Pac. 260; *Billups* v. *Utah Canal Co.,* 7 Ariz. 211, 63 Pac. 713; *Wooster* v. *Scorse,* 16 Ariz. 11, 140 Pac. 819; *Ensign* v. *Koyk,* 31 Ariz. 1, 250 Pac. 246.

■ This leaves for our consideration only the first assignment of error, which is that the court erred in its denial of defendants' motion to dismiss for lack of jurisdiction. The motion was based upon the provisions of chapter 74 of the Session Laws of 1933. This chapter reads, so far as material to this case, as follows:

"Section 1. No action shall be instituted or maintained under Sections 790 and 791, Revised Code of Arizona, 1928, to recover any actual and necessary expenses and mileage paid county officers prior to November 23, 1932.

"Sec. 2. Nothing herein contained shall be construed to repeal Sections 790 and 791, Revised Code of Arizona, 1928, and except as herein expressly modified said sections shall remain in full force and effect."

The three actions involved herein were pending in the superior court of Gila county at the time the act was passed, and were admittedly brought under sections 790, 791, Revised Code 1928, and it is urged by appellants that the act above quoted took from the trial court jurisdiction to hear them.

Plaintiff, on the other hand, contends that chapter 74, *supra,* is unconstitutional for three reasons:

(1) That it is an attempt by the legislature to exercise a function and power intrusted by the Constitution to the judiciary, in violation of article 3, Constitution of Arizona, which reads as follows:

"The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others."

(2) That it violates subdivisions 5, 14 and 18 of section 19, part 2, article 4, of the Constitution, in that it is a special law which (a) regulates the practice of law of courts of justice; (b) remits fines, penalties and forfeitures; and (c) relinquishes an indebtedness, liability and obligation to the state.

(3) That it is unconstitutional as being a direct violation of section 7, article 9, of the Constitution, which reads, so far as material, as follows:

"Section 7. Neither the State, nor any county, city, town, municipality, or other subdivision of the State shall ever give or loan its credit in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation. . . ."

We consider, therefore, only the constitutionality of chapter 74, *supra.* If it is constitutional, the court should have granted the motion to dismiss, for it is undoubtedly an attempt to forbid the institution or

maintenance of any of the three actions involved herein. If, however, the act is unconstitutional, the judgment must be affirmed, for the complaint clearly sets up a violation of sections 790 and 791, Revised Code 1928. The remedy asked for is that provided by statute for the violation of such sections, and, in the absence of the reporter's transcript, we must assume the evidence sustains the allegations of the complaint.

■■■ It is the contention of appellants that the legislature has the right to oust the jurisdiction of courts over causes which are pending, by the repeal or modification of the statute upon which the action depends, unless the repealing act contains a clause exempting pending actions from the operation of the repeal. *Hallowell* v. *Commons*, 239 U. S. 506, 36 Sup. Ct. 202, 60 L. Ed. 409; *Baltimore & P. R. R. Co.* v. *Grant*, 98 U. S. 398, 25 L. Ed. 231; 15 C. J. 825, and note. Plaintiff admits the cases cited by defendants sustain the general rule as stated above, but contends that they are not in point, for the reason that they deal only with situations where the repealing clause repealed the act upon which the cause of action itself was founded, while in the present case the repealing act leaves the cause of action in full force and effect, but merely prohibits the court from proceeding to hear it. We are of the opinion that plaintiff's position on this point is sound. If the legislature has given a right of action it may, of course, unless prevented by some constitutional provision, repeal the law which gives that right of action, so long as rights have not vested thereunder, and if the right of action itself fails, naturally the remedy falls with it. But where, as in the present case, the legislature has not tried to take away the right of action itself, and indeed has expressly, by chapter 74, *supra,* continued in force those provisions of the

Code which give that right, and merely attempts to prohibit the court from hearing certain particular suits brought by virtue of those sections, we are of the opinion that it is clearly an attempted invasion by the legislature of the functions of the judicial branch of the government.

The distinction between the two classes of repealing acts is well set forth in *McSurely* v. *McGrew,* 140 Iowa 163, 118 N. W. 415, 417, 132 Am. St. Rep. 248, and we quote therefrom as follows:

" . . . Remembering that this action was commenced before the curative act became effective, it is apparent, we think, that the second section thereof is unconstitutional and beyond the power of the Legislature. After action is brought it is certainly beyond the power of the Legislature to declare that action void and the court in which it is pending without jurisdiction. Such matters are purely judicial, and not legislative, and under our three-department system of government it is inadvisable for one to assume the powers, duties, or responsibilities of the other. When action is once commenced the question of jurisdiction is purely a judicial one, and the Legislature should not attempt to usurp the functions of the judiciary by such an act as is now under consideration. These principles are so fundamental as scarcely to need the citation of authorities in their support. [Citing cases.] If the defense were bottomed upon the second section of the curative act alone, it manifestly would be without merit. We may eliminate the second section of the act in question as clearly unconstitutional.

"The case must turn upon the acts and resolutions of the board of supervisors and the effect of the so-called curative act in so far as it attempts to validate these proceedings. It is practically admitted that the county treasurer had no right to make the bank deposits he did, and we are of opinion that the board of supervisors was without power to pass a resolution discharging the treasurer's bond and releasing his sureties. But it is contended that there

was enough doubt about the matter to justify the curative act, and that, whether this be so or not, the Legislature had power to cure any defects in the resolution and acts of the board, and that, even had there been no resolution, the Legislature had the authority to relieve McGrew from responsibility. . . .

"The Legislature undoubtedly had power, in the first instance, to absolve its county treasurer from liability when he deposited money in solvent banks; and, as no contract rights are involved, save as the statute created such rights, there seems to be no constitutional objection to passing a retroactive law which would operate upon past transactions. *State ex rel. Bulkeley* v. *Williams,* 68 Conn. 131, 35 Atl. 24, 421, 48 L. R. A. [465], 478. . . . "

The act is unconstitutional as an invasion of the rights of the judicial department of the government, contrary to article 3, *supra.*

But even though the act be construed, as was the first section of the one in *McSurely* v. *McGrew, supra,* as an attempt to legalize the illegal expenditures of the defendants, we think there is another and stronger reason why it would still be unconstitutional. It is undoubtedly true, both as a matter of statute and as a matter of common law, that when any person receives from the state or county treasury money to which he is not entitled as a matter of law, that he immediately becomes indebted to the state or county in the amount which he has thus illegally received. If thereafter the state or the county should endeavor to release the parties from the debt, it is clearly a donation of the amount of his indebtedness to such individual, which, under section 7, article 9, of the Constitution, is forbidden. *Rowlands* v. *State Loan Board,* 24 Ariz. 116, 207 Pac. 359; *Duke* v. *Yavapai County,* 24 Ariz. 567, 211 Pac. 862; *Udall* v. *State Loan Board,* 35 Ariz. 1, 273 Pac. 721; *Biles* v. *Robey,* 43 Ariz. 276, 30 Pac. (2d) 841. We think, further, that the act is unconstitutional as being special legis-

lation which violates subdivisions 5 and 18 of section 19, part 2, article 4, of the Constitution.

We regret the necessity of our holding that the judgment rendered herein is correct. The defendants in this case, as is admitted by plaintiff, acted in perfect good faith, relying upon an opinion of an Attorney General of this state, which had been followed by the majority of the boards of supervisors of the state for nearly fifteen years. But as we said in *Austin* v. *Barrett,* 41 Ariz. 138, 16 Pac. (2d) 12, 14:

"The universal rule is that he who accepts a public office takes it, not only with the rights, but the burdens attached thereto by law, and he may not complain because the burden is greater than that imposed on other officers. [Citing cases.]

"When supervisors are elected they know their respective places of residence and that they will be required to attend at the county seat to discharge their official duties. They are not obliged to seek for the office, nor to accept it if tendered them, and such being the case, if they accept it they take it with the necessary inconveniences and inequalities attaching thereto, and may not be heard to say that the law is unjust merely because it results in unequal compensation for their services.

"The point made in regard to the custom of administrative officers being of great weight in determining the meaning of a statute is more serious. That such is the general rule cannot be doubted. [Citing cases.] This is especially true when, after a long-continued interpretation, the Legislature re-enacts the statute without changing its language. [Citing cases.] But if the intent and purpose of the act be clear, no custom can prevail against the positive and definite terms of the law, and the courts should not follow an administrative construction which is clearly erroneous, even though continued for many years. . . ."

Since chapter 74, *supra,* is clearly unconstitutional as being (a) an attempt on the part of the legislature

to infringe upon the province of the judiciary; (b) an attempt to make a donation to individuals; and (c) special legislation; and since no other defense to the action appears in the record on appeal, as it is presented before us, we are most reluctantly compelled to affirm the judgment of the superior court of Gila county, and it is so ordered.

McALISTER and ROSS, JJ., concur.