[Civil No. 3704. Filed October 5, 1936.]

[61 Pac. (2d) 172.]

PIMA COUNTY, a Municipal Corporation, Appellant, v. GEORGE H. ANKLAM, JAY C. HICKS, WALTER R. DENISON, GEORGE W. PURCELL, THE METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK, a Corporation, INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, a Corporation, and AMERICAN BONDING COMPANY OF BALTIMORE, MARYLAND, a Corporation, Appellees.

Mr. Alexander Murry, County Attorney, and Mr. Harry O. Juliani, Chief Deputy County Attorney, for Appellant.

Messrs. Knapp, Boyle & Thompson, for Appellees George H. Anklam, Metropolitan Casualty Insurance Company, Walter R. Denison and American Bonding Company.

Messrs. Mathews & Bilby and Mr. T. K. Shoenhair, for Appellees J. C. Hicks and Indemnity Insurance Company of North America.

Messrs. Conner & Jones, for Appellee George W. Purcell.

ROSS, J.—This is an action by Pima county, brought at the instance of the county attorney, to recover from Dr. George W. Purcell, who was the county physician of said county during 1933 and 1934, the sum of $3,910, alleged to have been paid to him by the defendants, the board of supervisors, without authority of law. And judgment is also asked against the members of the board of supervisors for said sum, together with 20 per cent. penalty, and against the sureties on their official bonds.

Defendant Purcell was appointed by the board of supervisors as county physician of said county on January 3, 1933, at a fixed salary of $225 per month, and he served the county in that capacity for the two years of 1933 and 1934. He was paid his agreed salary each month. During the two years the Southern Methodist Hospital filed claims against the county for 110 administrations of anesthetics to county in-

digents at $10 each, or for $1,100, and was paid by the county. Under an arrangement with defendant Purcell, the hospital, as soon as it collected these fees from the county, paid them over to Purcell. Under like arrangement with the St. Mary's Hospital, Doctor Purcell received $2,810 for 281 administrations of anesthetics to county indigents, or all told $3,910. This is the sum the county seeks to recover.

Purcell's answer, while it makes certain denials, we think admits the allegations of the complaint and seeks to avoid their legal effect by a special defense which is "that at the time of his appointment as county physician on January 3, 1933, it was and had been the practice, and his appointment was made in light thereof, that the county physician should not be required at his expense to furnish an anesthetist at county operations and that the County should pay therefor as a hospital charge at the usual and prevailing rate for private operations; that after the said appointment of this defendant said practice was continued and the fees for the services of anesthetists paid by the County as hospital charges in the established and customary manner upon the demands of said hospitals upon Pima County; that said hospitals in due course accounted to such persons performing such service or furnishing the same." He also alleges that the county work had increased so much that it became necessary that defendant Purcell secure additional physicians to care for it, and that the method adopted to collect from the county the anesthetist fees was to secure money with which to pay for such additional help, and such moneys were so used.

The other defendants' answers consisted of admissions and denials.

At the trial the facts were stipulated and we quote therefrom as follows:

" . . . it is admitted by all the parties that the defendant George W. Purcell was appointed and employed as County Physician by the Board of Supervisors of Pima County on the 3rd day of January, 1933, at a salary of $225 per month, which salary was paid to the said Purcell during the years 1933 and 1934, while the said Purcell acted as County Physician as aforesaid; . ๑ . That the said salary was never increased, altered or in any manner changed by the said Board of Supervisors during the years 1933 and 1934.

"It is stipulated that the Southern Methodist Hospital from May 1st, 1933, to and including September 30th, 1934, made and presented sundry demands upon Pima County, duly approved by the defendant George W. Purcell as County Physician, for 110 anaesthetist fees, totaling the sum of $1,100; that the said sum of $1,100 was paid out of the treasury and funds of Pima County to the Southern Methodist Hospital, and the said sum of money was thereafter monthly paid over by the hospital to and received by the said George W. Purcell.

"It is stipulated that after Doctor George W. Purcell was appointed County Physician and until the month of March, 1933, the St. Mary's Hospital filed sundry demands for the administration of anaesthetist fees each in the sum of $10.00, and either retained the same because the service was performed by a Sister at the institution or paid the same to physicians other than Doctor Purcell during that period. That beginning in March, 1933, by agreement all anaesthetist fees for services performed by any physician employed by Dr. Purcell, including Doctors Kitt and Eason, who during a portion of said period were also employed by said Pima County, were turned over to Doctor Purcell by the said St. Mary's Hospital after collection by the hospital from the county of Pima, upon demand, all of said demands being approved by the said George W. Purcell as County Physician, but that this does not include any anaesthetist fees collected by the hospital for services ren-

dered to indigents by persons other than the physicians so employed by Doctor Purcell. That the total amount paid the St. Mary's Hospital on such demands so approved was the sum of $2,810; that the payments made by both hospitals to the said Doctor Purcell were by checks of the said hospitals to the said Purcell. . . .

"That prior to the appointment of Doctor Purcell as County Physician and for a considerable period of time it had been the practice for the hospitals mentioned in the complaint to make demands on Pima County for the services of anaesthetists at the rate of $10.00 per operation; that the County Physician prior to Doctor Purcell had not been required by contract or otherwise to render said anaesthetist services himself, but the same had been deemed and considered a proper hospital charge, and paid as such, by the county to the hospitals, but that the usage before mentioned did not include any repayment by the said hospitals to the county physician, such as alleged in the amended complaint herein, and the payments were made directly by the hospital to the person performing the anaesthetist service, for the reason that there was but one paid county physician prior to the appointment of the said Doctor Purcell."

This stipulation was supplemented by the testimony of the superintendent of the Southern Methodist Hospital, to the effect that one of the conditions upon which this hospital could have county patients was that it would agree to collect the fee from the county for each anesthetic administered and turn it over to Doctor Purcell. Also the testimony of Dr. Lewis H. Howard that surgical and medical attendance includes or covers the services of an anesthetist. Also the testimony of defendant Purcell to the effect that he had discussed with the board of supervisors, or its members, the matter of anesthetist fees and the board knew what he was doing.

Upon motion of the defendants at the close of plaintiff's case, the court entered judgment for all of the defendants, and from such judgment plaintiff has appealed.

The action was brought by the county attorney under section 790, Revised Code of 1928, which makes it his duty, when the board of supervisors shall, without authority of law, order any money paid out of the county treasury for any purpose, to institute an action to recover it, if it has been paid, with legal interest and 20 per cent. additional thereon. The motion was granted, as we understand, on the theory that the facts did not make out a case under section 790. It is contended by defendants, and that is the view taken by the trial court, that the statute authorizes the board of supervisors to pay the anesthetist fees to Doctor Purcell under the circumstances, and that therefore the action will not lie. In other words, it is contended that if county money is paid out for a purpose which the law under any circumstances will sanction, the members of the board are not under such section liable. It is said our decisions sustain this view. *Avery* v. *Pima County,* 7 Ariz. 26, 60 Pac. 702, 706; *Schumacher* v. *Pima County,* 7 Ariz. 269, 64 Pac. 490; *Webster* v. *Parks,* 17 Ariz. 383, 153 Pac. 455; *Batterton* v. *Pima County,* 34 Ariz. 347, 271 Pac. 720. In *Avery* v. *Pima County* it is shown that prior to 1893 the statutory law of Arizona limited the right of action, where money was paid out by the board of supervisors without authority of law, to the recipient of such money. Under Act 34 of the Seventeenth Legislative Assembly of the Territory 1893, the remedy theretofore existing against the recipient was extended to embrace the members of the board of supervisors. The provisions of the act of 1893 are practically the same as our sections

790 and 791, Revised Code of 1928. Under this legislation as originally enacted, it was the evident purpose to give a right of action against any person who obtained through the action of the board of supervisors moneys of the county to which he was not entitled under the law, and as amended the right of action as it existed against the recipient of such money was extended to include the members of the board of supervisors who authorize the unlawful payment. If the facts authorize an action against the recipient, they likewise authorize an action against the supervisors. The statute places them in the same category. As is said in the Avery case, *supra,* the board is placed "in exactly the same position as the man who presents the demand and receives the money. It does this in language too plain to be misunderstood—too distinct and explicit to warrant any attempt at construction. The fact that it makes the supervisors warrant their infallibility, and indemnify the county against the result of any error they may commit, however excusable or unavoidable it may be, or however honest and diligent they may have been in the matter, does not enable the court to afford them any relief when proceeded against under this act. When an act is plain and unambiguous, and is free from objection on constitutional grounds, the courts are bound to apply and enforce it, notwithstanding objections to its policy."

In *Schumacher* v. *Pima County, supra,* the action was against the members of the board of supervisors to recover money paid by them to the assignee J. S. Wood, probate judge of the county, on account of salary of $300 for the fourth quarter of 1896. The right of action was sustained against the board, it appearing that the said Wood was at the time indebted to the county for fees which he had earned

and collected as probate judge, and had not paid into the county treasury as required by law.

In *Webster* v. *Parks, supra,* the action was brought by a taxpayer of Greenlee county and among the sums sought to be recovered from the members of the board of supervisors were: $250 paid to the clerk of the board for making the duplicate assessment roll; $500 paid to E. C. Heck, architect, as a premium for plans and specifications for a courthouse and jail; and $65 to H. U. Tunis, expense money for attending a good roads convention at Prescott. We held that the money paid to the clerk of the board of supervisors was recoverable from them because it was the duty of the clerk, at his stated salary, to perform the work of making out a duplicate assessment roll; that there was no authority or power in the board of supervisors to pay Tunis the expense money for attending the good roads convention. As to the money paid to the architect, we said the statute authorized the board of supervisors to make such payment, and, it appearing the architect had rendered the services and the county had received the benefits thereof, that an omission to strictly comply with the law, when such omission caused the county no damage, could not make the board members liable to repay the premium to the county.

In *Batterton* v. *Pima County, supra,* the action was against the board of supervisors, its clerk, and their official bondsmen, and the persons to whom the money was paid. The money sought to be recovered was the purchase price of a part of block 192 of the city of Tucson, bought by the outgoing board of supervisors for a site for a county jail. We held that the statute authorized the board of supervisors to make such a purchase if previously thereto the value of the property was estimated as the law required by

three disinterested citizens of the county, etc. We said, it appearing that the board had followed the statute in ascertaining the property's value and in other respects, it acquired jurisdiction to make the purchase and had a right to purchase it; that the party selling the property to the county likewise had a right to receive the purchase price; that a fair exchange, or one made in accordance with the law, harmed no one. So we held there could be no recovery under section 790, *supra,* from the board of supervisors.

The rule contended for by defendants is not one announced by this court in any of the cases reviewed, but is found in a quotation in the Batterton and Webster cases, *supra,* taken from *Salt Lake County* v. *Clinton,* 39 Utah 462, 117 Pac. 1075, 1078. The Utah court says, although it was not necessary for it to go to that length, that the right to recover from the board is for money "paid out for a purpose which the law does not sanction under any circumstances," and it is this phrase that defendants point to as exempting them from liability.

██ We think the true rule is that if the recipient of county money cannot point to some law authorizing him, by reason of his official or contractual relation with the county, to receive such money, the board allowing his claim against the county is liable therefor under the terms of the statute, and that there is nothing in any of our decisions to the contrary. In other words, the claim must be a legal one or it is not authorized by law. In *Austin* v. *Barrett,* 41 Ariz. 138, 16 Pac. (2d) 12, 13, we said:

"The first and principal rule to be followed, in determining whether a claim against a county is legal, is that the person making the claim must show some statute affirmatively authorizing it, either di-

rectly or by reasonable implication. *County of Santa Cruz* v. *Barnes,* 9 Ariz. 42, 76 Pac. 621.''

16 Corpus Juris 562, section 264, says:

''One who asks payments of a claim against a county must show some statute authorizing it or that it arises from some contract express or implied which finds authority of law.''

■ Under these authorities it must appear that Doctor Purcell was entitled to collect anesthetist fees from the county by virtue of some statute or under a contract authorized by law, or both he and the supervisors and their bondsmen are liable to the county for whatever he received, together with penalties. The controlling statute is section 811, Revised Code of 1928, as amended by chapter 33, Laws of 1929, reading:

''Section 811. *Care of Indigents; Employees Therefor.* The board shall let the care of the indigents of the county, including medical attendance, medicine, food, lodging, clothing, and other supplies, to the best responsible bidder, after advertising for sealed bids or proposals in a newspaper and a notice posted in three or more public places in such county, at least ten days before the awarding of such contract. The board may reject any or all bids. The board may, however, employ a physician to furnish surgical and medical attendance, a superintendent, attendants, and such other help as may be necessary without advertising therefor.''

This section should be read in connection with sections 812, 813, 814, 815, 816 and 817. Thereunder the board of supervisors, after advertising for bids, may let the care of the county indigents out to the best responsible bidder, whose obligation is to furnish medical attendance, medicine, food, lodging, clothing and other supplies, the county furnishing its hospital. In such case the contractor must bear the

whole expense, even to the employing of physicians and surgeons for patients, and be paid therefor a fixed sum 'for each patient per day. Section 812, *supra*. The record does not show whether the care of the indigent of Pima county during 1933 and 1934 was let to a contractor or not. If it was, the contractor's agreement would, we think, cover the administering of anesthetics to indigent patients. The expert testimony was that "medical attendance" covers administering a narcotic. Doctor Purcell was not the general contractor. His employment was "to furnish surgical and medical attendance" for indigents admitted to the county hospital or given "outdoor relief." It would seem that his contract with the county is too plain to admit of any doubt. Clearly the administering of an anesthetic to a person being operated upon is covered by surgical and medical attendance. Whatever surgical and medical attendance reasonably necessary for patients, Doctor Purcell bound himself to give for $225 per month. He could not take or receive the anesthetist fees for to do so would increase his salary and violate section 2799, Revised Code of 1928, the pertinent part of which reads:

"All state or county officers, employees, members of boards and commissions not mentioned in this chapter, and all deputies, stenographers, clerks and employees of any officer, board or commission, or of any institution, shall receive the salary. provided by the laws creating or authorizing their respective positions, and shall not, under any pretext, receive any salary or emolument in excess of the salary so provided by law."

There is no pretense that the hospitals had any contract for anesthetist fees. While they went through the legal form of presenting verified claims for such fees, it is admitted they did so at the in-

stance and for the benefit of Doctor Purcell, and that they, after collecting such fees from the county, paid them over to the doctor.

Whether the board of supervisors might, in a proper case and in some circumstances, employ anesthetists to assist at operations on indigents is not involved. The fact is that the supervisors did not specifically employ anybody to do this work. It seems to us that the county attorney had, when he closed his evidence, made out a case in favor of the plaintiff, and that the court erred in denying the county relief.

■ The defendants did not put in any defense and in their briefs they ask that should the judgment be reversed they be permitted to present their side of the case. Their only defenses seem to be that it had been the practice during previous administrations to allow anesthetist fees, and that the work had become so great and heavy after the contract was entered into as to require additional help. In view of the request that defendants be allowed to present their side of the case, we will not direct judgment for plaintiff, but we suggest that the heavy end of the oar showing the validity of the defenses suggested is with the defendants. *Austin* v. *Barrett, supra; Puterbaugh* v. *Gila County,* 45 Ariz. 557, 46 Pac. (2d) 1064.

The judgment is reversed and the cause remanded, with directions that further proceedings be had in accordance herewith.

LOCKWOOD, C. J., and McALISTER, J., concur.