467 P.2d 949

MARICOPA COUNTY, a political subdivision of the State of Arizona, Appellant,

v.

The CITIES & TOWNS OF AVONDALE ET AL., WICKENBURG, Appellees.

No. I CA–CIV 998.

Court of Appeals of Arizona, Division 1, Department B.

April 16, 1970.

Rehearing Denied May 11, 1970.

Review Denied June 9, 1970.

**110**

Moise Berger, Maricopa County Atty., and Albert Firestein, Chief Civil Deputy County Atty., Phoenix, for appellant.

J. LaMar Shelley, City Atty., Mesa, William G. Barnes, City Atty. of Avondale, Phoenix, Eldon H. Towner, City Atty. of Buckeye and Gila Bend, Buckeye, Walter J. Reynolds, Jr., City Atty., Chandler, Norman L. Wykoff, City Atty. of El Mirage, Glendale, Sam Woodburn, City Atty. of Gilbert, Chandler, Irving H. Bahde, Jr., City Atty., Glendale, F. Britton Burns, City Atty. of Goodyear, Phoenix, Allen R. Perry, City Atty. of Peoria, Phoenix, Robert J. Backstein, City Atty., Phoenix, Richard Filler, City Atty., Scottsdale, David R. Merkel, City Atty., Tempe, Sidney Mitchell, City Atty. of Tolleson, Phoenix, Frank Stanlis, City Atty., Wickenburg, for appellees.

JACOBSON, Judge.

This action was brought by the plaintiff-appellant Maricopa County in 1966 to recover the amount of Use Fuel Tax monies mistakenly paid by the County to the defendants-appellees cities and towns between 1946 and early 1963. We review a judgment in favor of defendants. The case was tried on stipulated facts, the substance of which we will set forth in the context of the pertinent legislative history.

The Motor Vehicle Fuel Tax,[1] or "gas" tax, was enacted in 1927 as the successor to a tax first imposed in 1921. By the terms of this legislation, three-tenths of the amount collected from gasoline distributors is apportioned among the counties.[2] In 1941, the Use Fuel Tax[3] was enacted. The Use Fuel Tax is essentially a tax on the use of highway transportational fuels other than gasoline (i. e., diesel). See City of Mesa v. Killingsworth, 96 Ariz. 290, 394 P.2d 410 (1964). By the terms of this legislation, three-tenths of the revenues collected are also apportioned to the counties.[4] Both forms of taxation provide, in substantially identical terms, that funds which properly belong to a county shall be used for construction, improvement or maintenance of county highways or bridges, or for the retirement of or payment of interest upon county highway bonds, as determined by a county's Board of Supervisors.[5]

1. A.R.S. § 28–1501 et seq. (1956).

2. A.R.S. § 28–1502, subsec. A (1956).

3. A.R.S. § 28–1551 et seq. (1956).

4. At the time this litigation was commenced in 1966, the pertinent statutory section was A.R.S. § 28–1555, subsec. A (1956). The entire article was substantially amended effective June 30, 1969, and the pertinent provision is now A.R.S. § 28–1557, subsec. A (Supp.1969–70).

5. See A.R.S. § 28–1502, subsec. D (1956) with respect to the Motor Vehicle Fuel Tax, and § 28–1557, subsec. B, as amended effective June 30, 1969, with respect to the Use Fuel Tax. At the time this litigation was commenced in 1966, the pertinent Use Fuel Tax section was A.R. S. § 28–1555, subsec. B (1956).

On November 25, 1946, an initiative measure took effect which provided that one-third of the "gas" tax funds distributed to the counties were to be paid over by the counties to the several incorporated cities and towns within their borders, on a population basis.[6] These funds were to be used by the cities and towns for certain specified municipal street improvement, maintenance, and administrative expenses.[7]

No comparable measure was passed affecting a county's share of revenues generated by the Use Fuel Tax. Thus, although by the end of 1946 a county was required by statute to give up to the incorporated cities and towns within its borders one-third of its Motor Vehicle Fuel or "gas" tax monies, it could keep all of its monies derived from the Use Fuel Tax.

Notwithstanding that state of the law, the plaintiff Maricopa County commenced as of November 25, 1946, to pay to its constituent cities and towns not only one-third of its allocated share of "gas" tax revenues, but also one-third of its share of Use Fuel Tax revenues, giving rise to the present litigation. (The apparent basis of the mistake is the subject of City of Mesa v. Killingsworth, supra.) According to the stipulation of the parties, the Use Fuel Tax monies were distributed by the plaintiff to the defendant cities and towns "* * * in the same manner as gas tax funds were distributed."

These distributions of Use Fuel Tax monies continued in the same manner until April, 1963. During this period a total of $548,217.03 was distributed by the plaintiff among the 17 defendant constituent cities and towns. We quote the remaining facts from the stipulation of the parties:

"5. That early in 1966 plaintiff * * for the first time made demand upon the defendant Cities and Towns for payment of the sums [of use fuel tax monies distributed] * * * and that when payment was not forthcoming, this action was commenced.

"6. That funds received from plaintiff by defendant Cities and Towns by reason of the use fuel tax payments referred to * * * have been used by such defendants for the precise purposes enumerated in Section 28–1502, Arizona Revised Statutes.

"7. That filed herewith are Exhibits * * * which exhibits show the municipal limits of those defendant Cities and Towns organized in 1946 and all subsequent annexations * * *. That all of the use fuel taxes paid by plaintiff County to defendant Cities and Towns have been spent for the improvement of roadways to serve persons residing within these areas.

"8. That until April, 1963, none of the defendant Cities or Towns had any knowledge or information that any funds received by them from plaintiff County were improperly or mistakenly paid, and all of such funds were spent for lawful purposes."

The county has repeatedly asserted both in its pleadings, its briefs, and oral argu-

---

6. A.R.S. § 28–1502, subsec. B (1956).

7. The pertinent statutory subsection, A.R.S. § 28–1502, subsec. C (1956), provides as follows:
   "C. The tax accruing to the incorporated cities and towns shall be used by them as may be determined by the governing bodies thereof solely for improvement, construction, reconstruction or maintenance of municipal streets and highways and administrative expenses in connection therewith, including retirement of bonds issued after November 25, 1946, for the payment of which such revenues have been pledged, and for no other purposes. The tax so accruing to the incorporated cities and towns shall be kept in a separate fund and may be allowed to accumulate from year to year and shall not be subject to the provisions of article 4 of chapter 2, title 42."

ment before this court that its claim is based solely upon the principle which grants a remedy for an unjust enrichment. See, e. g., Ray School District No. 3 of Pinal County v. Pinal County, 95 Ariz. 205, 388 P.2d 418 (1964). The defendants challenge the propriety of such a recovery under the circumstances shown. They also raise the defense of laches, and further urge that permitting a "retroactive" recovery would seriously jeopardize their financial condition, relying upon Southern Pacific Co. v. Cochise County, 92 Ariz. 395, 377 P.2d 770 (1963). Defendants also place great emphasis on Chapter 106 of the Session Laws of 1966, which was declared to be an emergency measure and took effect upon approval by the Governor on May 5, 1966, a little less than two months after the filing of the County's complaint. This act, which deals with the precise situation before us and which provides that "No action shall lie for the recovery" of any sums so distributed, is set forth in a footnote.[8] Plaintiff counters with the contention that this enactment is a "local or special law" in limitation of a civil action, proscribed by Article IV, part 2, § 19 of the Constitution of Arizona, A.R.S. It is also contended that the enactment violates the principle of separation of powers, in that it assertedly ousts the Superior Court of jurisdiction previously attached. See Puterbaugh v. Gila County, 45 Ariz. 557, 46 P.2d 1064 (1935). (*But see* Annot., 171 A.L.R. 1352 (1947).)

While the curative statute last referred to is directed specifically to a factual situation precisely like the one at bar, we think that we should properly first consider whether the stipulated facts show a sustainable claim for restitution without reference to the statute. In our view, upon analysis, the County's claim does not pass this first test.

We fully recognize that as a general rule, a public body can recover funds paid out by mistake. Restatement of Restitution § 46(a) (1937); Agnes Township v. Grand Forks County, 56 N.D. 505, 218 N.W. 212 (1928); and see cases cited in Glendale Union High School District v. Peoria School District No. 11, 55 Ariz. 151, at 155–156, 99 P.2d 482, at 483 (1940). Strong considerations of public policy support such a rule. See Levitt, "The Recovery of Moneys Paid Out by Government Officials through Mistake of Law or Fact," 9 Iowa L.B. 225 (1924). Such a recovery may be had against another public body, even though the conferring and recipient entities have overlapping citizenries. See, e. g., City of Milwaukee v. County of Milwaukee, 27 Wis.2d 53, 133 N.W.2d 393 (1965); Restatement, supra, § 46, Illustration 2 under Comment on Clause (a). By the better rule, where public monies are involved, recovery is not defeated by the circumstance that the mistake is one of law rather than one of fact. Restatement, supra, §§ 45, 46(a); 3 Corbin on Contracts § 617, at 758 (1960); 5 S. Williston, Law of Contracts § 1590 (rev. ed. 1937); *compare* the conclusions of the annotator in Annot., 63 A.L.R. 1346 (1929).[9]

---

8. "Section 1. Use fuel tax; payment to cities and towns; limitation of action.

"No action shall lie for the recovery of any sums distributed by a county to any incorporated city or town during the period commencing November 25, 1946 and ending on the effective date of this act, provided such funds were distributed from monies made available to the county under the provisions of the use fuel tax act, and the funds were used by the incorporated cities and towns for the purposes enumerated in subsection C, section 28–1502, Arizona Revised Statutes."

9. Prior to Bilbie v. Lumley, 2 East 469 (1802), a decision by Lord Ellenborough, no distinction affecting the right to recover was made between a mistake of fact and a mistake of law. The decision is itself regarded as a mistake of antecedent law. See Restatement of Restitution, Introductory Note to Topic 3, at 179–180; 3 Corbin on Contracts § 617, note 51 (1960).

No claimant, however, has an absolute right to restitution for an enriching benefit, mistakenly conferred. Comment c under § 1 of the Restatement of Restitution states:

"Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it."

A change of circumstances, occurring after transfer of the benefit, may defeat an otherwise tenable claim for restitution. Restatement, supra, §§ 69, 142. As summarized in Comment a under § 69, " * * * relief will not be granted where circumstances have so changed that it would be inequitable to require the other to make full restitution." This defense may be successfully asserted " * * * if the conduct of the recipient was not tortious and he was no more at fault for his receipt, retention or dealing with the subject matter than was the claimant." Restatement, supra, § 69(2).

Laches may also defeat a claim for restitution. Restatement, supra, § 148. Laches involves an unreasonable delay after knowledge of the facts which works a hardship. *Id.* The County contends here that laches cannot be so applied as to bar a claim by a public body in its governmental capacity. We agree to the extent that neither laches nor its generic parent, estoppel, can be asserted to gain rights against the public or to defeat the public interest. George v. Arizona Corporation Commission, 83 Ariz. 387, 392, 322 P.2d 369, 372 (1958); State ex rel. Sullivan v. Moore, 49 Ariz. 51, 62, 64 P.2d 809, 814 (1937); *see also* City of Bisbee v. Cochise County, 52 Ariz. 1, 78 P.2d 982 (1938). But the reason for the rule denying the defense disappears when the contest is solely between two public bodies.

State ex rel. O'Connor v. Clay County, 226 Iowa 885, 285 N.W. 229, 235 (1939). Accordingly, as between municipal corporations, the defense of laches is available. Royal Oak Township v. School District No. 7, 322 Mich. 397, 33 N.W.2d 908, 911 (1948).

These principles, in combination, defeat the claim advanced. In the first place, though we attach less significance to this aspect of the case, the equities behind the County's claim are less than 100% compelling. Use Fuel Tax revenues have doubtless been generated in some substantial part by users in cities and towns, and it is common knowledge that traffic density and concomitant street and highway expense is high in urban areas. Although counties are limited in making highway expenditures within cities and towns,[10] it is at least possible that had the funds in question been properly retained by the County, the needs of the expanding municipal populations may have required their expenditure in some substantial part in areas later annexed into the defendant municipalities. In any event, it is undisputed that all of the monies were spent to improve roadways within Maricopa County, and since public roads by their very nature benefit all travelers indiscriminately, there can be little disputing the probability that to some substantial, if unmeasurable, extent the expenditure of the funds by the cities and towns redounded to the benefit of the County and its extra-municipal citizenry.

We give decisive weight to the following considerations. For over 16 years the County regularly distributed the funds in question to defendants. From all that appears, this payment was made voluntarily, on the initiative of the County, and not in response to an asserted claim or demand by the defendants. Cf. City of Milwaukee v. County of Milwaukee, supra.

10. See A.R.S. §§ 18-207 and 18-208. (1956) (Supp.1969–70).

See also A.R.S. § 18-208.01; added in 1968

**114**

The defendants concededly had no knowledge at the time of payment that any of the funds were improperly or mistakenly paid. They were at worst no more at fault for failing to look a faithful gift horse in the mouth than was the County in erroneously making the distributions. Considering the source, the manner of payment, and all of the other circumstances, defendants used the money in the expectable manner—to improve and maintain street systems. Acting innocently and with as much logic as the situation permitted, they poured the funds into asphalt, concrete, and maintenance. These are not marketable or recoverable items; the money spent cannot be unspent.

Considering the duration of time involved and the fact that it was the County's initial erroneous act which enabled these defendants to incur these irreversible expenditures, we do not think, under all of the circumstances, that this is the kind of enrichment which should be balanced on the scales of justice by restitution. A holding to the contrary would be tantamount to sanctioning the County's leading its municipalities into a fiscal trap.

Had the County moved quickly in April, 1963, to recover any recently distributed funds prior to expenditure by defendants, we might well have a different case with respect to those particular 1963 funds, if any there were. The record indicates, however, that no demand at all was made until early in 1966, and that all funds previously received had been expended. The momentum built up by 16 years of customary practice demands a faster foot on the brake.

The judgment of the trial court is affirmed.

EUBANK, P. J., and HAIRE, J., concur.